# LEWIS *v.* PIMA COUNTY.

### APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 550. Submitted October 17, 1894. — Decided October 29, 1894.

The act of the legislature of Arizona of February 21, 1883, authorizing Pima County in that Territory to issue its bonds in aid of the construction of a railway, is a violation of the restrictions imposed upon territorial legislatures by Rev. Stat. § 1889, as amended by the act of June 8, 1878, c. 168, and the bonds issued under the authority assumed to be conferred by that statute created no obligation against the county which a court of law can enforce.

THIS was an action originally begun in the District Court of the First Judicial District of Arizona upon 2250 coupons

attached to 150 bonds, issued by the defendant county July 1, 1883, and payable to the Arizona Narrow Gauge Railroad Company or bearer. The railroad in question was organized under a general act of the territorial legislature for the incorporation of railroads, passed in 1879, which gave them power to make all contracts, acquire real and personal property, to sue and be sued, to borrow money necessary for the construction of the road, to issue bonds and notes therefor, and to receive donations or voluntary grants of real and personal property to that end. The bonds in question were issued by the board of supervisors of the defendant county under an act of the legislature of Arizona of February 21, 1883, entitled " An act to promote the construction of a certain railroad," and were part of a series of 200 bonds issued in pursuance of said act, and exchanged for a like number of bonds of the railroad company of like amounts, bearing like interest, and running like times as the bonds in suit.

Defendant demurred to the complaint both generally and specially, and upon argument the demurrer was sustained and judgment entered in favor of defendant.

Plaintiff appealed to the Supreme Court of the Territory, by which the judgment of the District Court was affirmed. He thereupon sued out this writ of error.

*Mr. W. H. Barnes* and *Mr. W. H. Rossington* for appellant.

*Mr. Charles Weston Wright* for appellee.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

This case involves the validity of certain bonds issued by the county of Pima under an act of the legislative assembly of Arizona, approved February 21, 1883, authorizing and requiring the board of supervisors to issue $200,000 of bonds of such county, and to exchange the same in lots of $50,000 each for an equal number of the bonds of the Arizona and Narrow Gauge Railroad Company, secured by a mortgage

upon its road. Assuming that the bonds were issued in conformity with this act, the act itself is claimed to be in conflict with certain acts of Congress upon the subject of the organization of Territories.

By Rev. Stat. § 1889, of a chapter containing a provision common to all the Territories, " the legislative assemblies of the several Territories shall not grant private charters or especial privileges, but they may, by general incorporation acts, permit persons to associate themselves together as bodies corporate for mining, manufacturing, and other industrial pursuits, or the construction or operation of railroads, wagonroads, irrigating-ditches, and the colonization and improvement of lands in connection therewith, or for colleges, seminaries, churches, libraries, or any benevolent, charitable, or scientific association."

In 1878 this section was amended by an explanatory act, (Act of June 8, 1878, c. 168, 20 Stat. 101,) to the effect that the restrictions contained in section 1889 "shall not be construed as prohibiting the legislative assemblies  .  .  . from creating towns, cities, or other municipal corporations, and providing for the government of the same, and conferring upon them the corporate powers and privileges, necessary to their local administration, by either general or special acts." Following this there is a paragraph validating acts theretofore passed creating municipal corporations, and providing further that " nothing herein shall have the effect to create any private right, except that of holding and executing municipal offices, or to divest any such right, or to make valid or invalid any contract or obligation heretofore made by or on behalf of any such town, city, or other municipal corporation, or *to authorize any such corporation to incur hereafter any debt or obligation other than such as shall be necessary to the administration of its internal affairs.*"

In the face of these restrictions upon its power, the legislature of Arizona, on February 21, 1883, passed the act in question, making it the duty of the board of supervisors to issue $200,000 of county bonds, and to deliver the same to the railroad company in exchange for corresponding bonds

of such company. Now, unless a debt thus incurred in aid of the construction of a railroad can be said to be an obligation " necessary to the administration of the internal affairs " of Pima County, it must necessarily follow, irrespective of every other consideration, that the legislature exceeded its powers in authorizing and requiring the county to issue its bonds in exchange for those of the railroad company in question, and that the bonds are void.

The question is too clear for extended argument. By the " internal affairs " of a municipal corporation, in the adminis-tration of which the legislature could alone authorize it to incur a debt, was undoubtedly intended such business as municipalities of like character are usually required to engage in to fulfil their proper functions, and to effectuate the objects of their charters. In the case of counties these are ordinarily to provide a court-house for the administration of justice ; a jail for the confinement of prisoners ; a poor-house for the sustenance of paupers (where by local law they are made chargeable upon the county ); offices for the various officials of the county ; and, under certain circumstances, highways and bridges for the accommodation of the public. It could never have been contemplated, however, that this power would be used to incur obligations in favor of a railroad operated by a private corporation for private gain, though also subserving a public purpose. The record before us does not show whether this railroad was designed to extend beyond the limits of the county ; but if the county had power to issue its bonds in aid of railroads at all, there is nothing to indicate that such power was restricted to such roads as were wholly within the county, and if this act were a valid exercise of the authority of the legislature, the credit of the county might be indefinitely pledged for the construction of railways extending far beyond the county limits, and, indeed, for carrying out any such schemes of public improvement as the legislature could be persuaded to authorize. Clearly such debts would not be incurred in the administration of the internal affairs of the county.

The argument of counsel on both sides was la gely directed

to the question whether the territorial act of 1883, under which these bonds were issued, conferred an "especial privilege" upon the railroad company, within the meaning of Revised Statutes, section 1889, inhibiting "private charters and especial privileges," and also to the further question whether bonds issued under a mandatory or compulsory statute are valid. But in the view we have taken of the case it is unnecessary to express an opinion upon these points.

We are compelled to hold that the bonds in question create no obligation against the county which a court of law can enforce.

The judgment of the court below is, therefore,

*Affirmed.*