159 U.S. 611 (1895)
FOLSOM
v.
NINETY SIX.
No. 854.
Supreme Court of United States.
Submitted December 8, 1894.
Decided November 18, 1895.
CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.
*615 Mr. John K. Shields, (with whom were Mr. James T. Shields, Mr. H.J. Haynesworth, and Mr. L.W. Parker,) submitted on his brief for plaintiff in error.
Mr. W.C. Miller submitted on his brief for defendant in error.
*619 MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.
By the constitution of South Carolina of 1868, art. 9, sec. 8, "The corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes." 2 Charters and Constitutions, 1659.
The situation arising out of the subsequent acts of the legislature and decisions of the courts of the State, with regard to bonds like those now in question, will be best understood by stating these acts and decisions in chronological order.
By the act of September 26, 1868, entitled "An act to organize townships, and to define their powers and privileges," the inhabitants of every township were declared to be a body politic and corporate, with power to sue and be sued to hold and convey real and personal estate, to make contracts, to hold meetings, to elect town officers, to vote money for schools, burial grounds, highways and bridges, and to lay taxes for the purpose of keeping highways and bridges in repair; the lines of the townships were to be perambulated, and the marks and bounds renewed, once in every seven years forever; and the act was to take effect, as to each township, on the completion of the duties assigned to county commissioners under §§ 11, 12, of another act of the same date, by which the county commissioners were directed to divide the counties into townships, to establish their boundaries, and to designate the name of each, and the time and place of holding its first meeting. 14 Statutes of South Carolina, pp. 128, 143-151.
By the act of January 19, 1870, the township act of 1868 was repealed, "except that portion of the same fixing the number, names and boundaries of the respective townships of the respective counties." 14 Statutes of South Carolina, p. 313.
*620 The act of December 23, 1882, chartering the Greenville and Port Royal Railroad Company, as amended by the act of December 24, 1885, (both of which were declared to be public acts,) contained the following provisions:
"SECT. 6. That, in addition to the provisions contained in the preceding section for private subscription, it shall and may be lawful for any city, town, county or township, interested in the construction of said road, to subscribe to its capital stock such sum as a majority of their voters, voting at an election held for that purpose, may authorize the county commissioners or proper authorities of such city, town, county or township, to subscribe, which subscription shall be made in seven per cent coupon bonds, payable in such installments as the county commissioners or proper authorities of such city, town, county or township may determine, and to be received by said company at par; said bonds to be made payable in sixteen, twenty, twenty-four and twenty-eight years after the date thereof, and to be of the denomination of one hundred dollars, five hundred dollars and one thousand dollars: Provided that a sufficient sum realized from such bonds shall be retained to complete the grading through the county or township in which it is subscribed: Provided that no election shall be held in any of the towns, cities or townships in said counties unless one half of the owners of real estate situate and living in such town, city or township shall first petition for an election on the subject of subscribing to the capital stock, as hereinbefore provided; and no subscription shall be made by any of the towns, cities or townships until the conditions of this proviso shall have been complied with."
"SECT. 9. That, for the payment of the interest on such bonds as may be issued by said counties, cities, towns or townships, the county auditor, or other officer discharging such duties, or the city or town treasurer, as the case may be, shall be authorized and required to assess annually upon the property of said city, town, county or township such per centum as may be necessary to pay said interest of said sum of money subscribed, which shall be known and described in the tax book as said railroad tax, which shall be collected by the treasurer *621 under the same regulations as are provided by law for the collection of taxes in any of the counties, cities, towns, or townships so subscribing, and which shall be paid over by the said treasurer to the holders of said bonds, as the interest shall come due, on presentation of the coupons, which said coupons shall be reported to the county commissioners by said treasurer, or the council of any city or town where there are coupons from the bonds of such city or town, and all such coupons shall be cancelled by the county treasurer as soon as they are paid by them.
"That, for the purposes of this act, all the counties and townships in said counties, along the line of said railroad, or which are interested in the construction as herein provided for, shall be, and they are hereby declared to be, bodies politic and corporate, and vested with the necessary powers to carry out the provisions of this act; and shall have all the rights, and be subject to all the liabilities, in respect to any rights or causes of action growing out of the provisions of this act.
"The county commissioners of the respective counties are declared to be the corporate agents of the counties or townships so incorporated and situate within the limits of said counties." 19 Statutes of South Carolina, pp. 239-241.
The power of the legislature, under the constitution of the State, to authorize townships to subscribe for stock, and to direct the issue of the bonds, in aid of the construction of railroads, appears to have been assumed, as undoubted, by the Supreme Court of the State, April 15, 1885, in Chamblee v. Tribble, 23 So. Car. 70; and July 14, 1886, in Carolina Railway v. Tribble, 25 So. Car. 260, 266.
By the act of December 19, 1887, the amending act of 1885 was further amended by adding a section providing "that, within ten years of the time when the bonds which may be subscribed to the capital stock of said corporation shall fall due, the money to pay the same shall be raised by taxation in the same manner, and paid out by the county treasurer, as provided for the payment of the annual interest on such bonds." 19 Statutes of South Carolina, p. 921. The principal, if not the only, object of this act would seem to have *622 been to extend to the principal sums of the bonds the provision of the earlier statute authorizing the assessment and collection of taxes "for the payment of the interest on said bonds."
On November 30, 1888, an action by taxpayers in township Ninety Six to recover back taxes paid by them, under protest, to meet the interest on bonds issued by the county commissioners in behalf of the township under the acts of 1882 and 1885, was sustained by the supreme Court of South Carolina, by concurring opinions of Chief Justice Simpson and Justice McIver, upon the ground that by the act of 1870, repealing the act of 1868, townships were left as mere territorial divisions, with no corporate powers, privileges or purposes; that, as no duty was imposed on them, or right given them, by the acts of 1882 and 1885, except to subscribe to stock in this particular railroad and to assess taxes to pay the subscription, they were without any corporate purpose; and therefore those acts, as applied to them, were in violation of the provision of the constitution. Floyd v. Perrin, 30 So. Car. 1; Whitesides v. Neely, 30 So. Car. 31.
Justice McGowan dissented, upon the grounds that the township "was certainly a corporation from the adoption of the constitution (1868) until 1870, when its corporate powers were withdrawn by the legislature, leaving the territorial division, with its lines, boundaries and name already fixed, like a lifeless body; ready, however, to have the new life of a corporation breathed into it;" that "no other power but the legislature could give it that new life;" that in 1885 the legislature passed the act chartering the railroad, in which it declared, for the purposes of this act, the counties and townships along the line of the road (of which this was one) to be corporations, with the necessary powers to carry out the provisions of the act, and with the rights and liabilities in respect to any causes of action growing out of its provisions; that "it may be thought by some to be rather a meagre corporation  scant in powers, authorities and officials as such; but it must not be overlooked that the legislature, which created it, had the undoubted right to give it such shape and form as it thought *623 proper  with a single power or a dozen;" and that the power to aid in building a railroad, when given by act of the legislature to a township corporation, whether a corporation already existing, or one created by the same act, was a corporate purpose, that is to say, a purpose benefiting the corporation. 30 So. Car. 24-30.
On December 14, 1888, petitions for rehearing of those cases were denied. 30 So. Car. 31, 33.
On December 22, 1888, an act, entitled "An act to provide for the payment of township bonds issued in aid of railroads in this State," was passed, to take immediate effect, beginning as follows: "Whereas certain townships in this State have, by their vote, expressed their willingness to subject themselves to taxation for the purpose of paying bonds issued by them in aid of certain railroads; and whereas, by reason of a defect in the acts authorizing the issue of said bonds, they have been declared invalid: Now, therefore, for the purpose of carrying into effect the expressed will of the people of said townships," it was enacted as follows:
SECT. 1. "The township bonds heretofore issued by county commissioners as the corporate agents of any township in this State, in aid of any railroad, by vote of the inhabitants of said township, are hereby declared to be debts of said township respectively having authorized the issue of the same. And the interest and principal thereof shall be paid, according to the terms of the said bonds or debt, by the assessment, levying and collection of an annual tax upon the taxable property in said townships, so far as may be necessary, in like manner and by the same county officials as the tax levied for county bonds in aid of railroads is assessed, levied and collected. Said tax to be known and styled in the tax books as the township railroad tax, and when collected shall be paid over by the treasurer of the county to the holders of said bonds as the interest thereon may become due and according to the terms thereof. All dividends received by or for said townships, on stock in railroad companies which have been aided by the said township bonds or debt, shall be applied by the county commissioners of the county in which said townships *624 are respectively situated, primarily towards the payment or retirement of said bonds or debt, and the surplus shall be expended in the improvement of the highways within the territorial limits of said township."
SECT. 2. "No tax shall be levied under the provisions of this act to pay the interest on any township bonds until the railroad in aid of which they were subscribed shall be completed through such township and accepted by the railroad commissioners." 20 Statutes of South Carolina, p. 12.
This statute is not mentioned in the questions certified, and, as it is not alleged or suggested that the railroad has been completed through this township, has no direct application to this case. We refer to it only as part of the history of legislation and decision in the State upon the subject.
On April 15, 1889, the Supreme Court of South Carolina held that, since, by its decision in Floyd v. Perrin, a township could not be authorized by the legislature to issue bonds in aid of the construction of a railroad, it followed that the act of 1888 could not be upheld as validating bonds issued by a township under the earlier acts, because the legislature could not ratify what it could not have authorized; but that the act of 1888 was an original exercise of the power of the legislature to authorize taxation for any public purpose, such as was the building of railroads in the State; and that the legislature, therefore, being satisfied of the consent of the township, had constitutionally fixed upon them the debt represented by the bonds previously issued without authority, and to be paid according to the provisions of the new act. State v. Whitesides, 30 So. Car. 579; State v. Neely, 30 So. Car. 587.
The first question certified to this court by the Circuit Court of Appeals is, "Whether, upon the averments of the complaint, the Circuit Court was bound, in passing upon this case, by the decision of the Supreme Court of South Carolina in Floyd v. Perrin 30 So. Car. 1?"
The general principles which must govern the decision of this question have been often affirmed by this court, and were stated by Mr. Justice Bradley, in delivering judgment, after great consideration, in the leading case of Burgess v. Seligman, as follows:
*625 "The Federal courts have an independent jurisdiction in the administration of state laws, coördinate with and not subordinate to that of the state courts, and are bound to exercise their own judgment as to the meaning and effect of those laws. The existence of two coördinate jurisdictions in the same territory is peculiar, and the results would be anomalous and inconvenient, but for the exercise of mutual respect and deference. Since the ordinary administration of the law is carried on by the state courts, it necessarily happens that by the course of their decisions certain rules are established, which become rules of property and action in the State, and have all the effect of law, and which it would be wrong to disturb. This is especially true with regard to the law of real estate, and the construction of state constitutions and statutes. Such established rules are always regarded by the Federal courts, no less than by the state courts themselves, as authoritative declarations of what the law is. But where the law has not been thus settled, it is the right and duty of the Federal courts to exercise their own judgment; as they also always do in reference to the doctrines of commercial law and general jurisprudence. So when contracts and transactions have been entered into, and rights have accrued thereon under a particular state of the decisions, or when there has been no decision of the state tribunals, the Federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued. But even in such cases, for the sake of harmony and to avoid confusion, the Federal courts will lean towards an agreement of views with the state courts if the question seems to them balanced with doubt. Acting on these principles, founded as they are on comity and good sense, the courts of the United States, without sacrificing their own dignity as independent tribunals, endeavor to avoid, and in most cases do avoid, any unseemly conflict with the well-considered decisions of the state courts. As, however, the very object of giving to the national courts jurisdiction to administer the laws of the States in controversies between *626 citizens of different States was to institute independent tribunals which it might be supposed would be unaffected by local prejudices and sectional views, it would be a dereliction of their duty not to exercise an independent judgment in cases not foreclosed by previous adjudication." 107 U.S. 20, 33, 34.
In the case at bar, the statutes of the State of South Carolina, under which the bonds were issued, were passed in 1882 and 1885. The bonds were issued in behalf of the township, and were purchased by the plaintiff, in 1886. It is alleged in the complaint, and admitted by the demurrer, that he purchased the bonds, relying upon their being legal and valid obligations of the township; and that, at the times of their issue and purchase, these bonds and like bonds of other townships were regarded and treated as valid securities by the corporate authorities of the township, by the public, by the legal profession, and by the legislative, executive and judicial departments of the State. And the decisions of the Supreme Court of the State, during the same period, appear to have assumed the validity of such bonds. Chamblee v. Tribble, and Carolina Railway v. Tribble, above cited.
The decision in Floyd v. Perrin, holding such bonds to be invalid, was by two judges only, against a strong dissent, and was not made until November 30, 1888, and a rehearing was denied December 14, 1888. Eight days after, on December 22, 1888, the legislature passed an act, to take immediate effect, declaring the bonds previously issued, in behalf of any township, to be debts of the township, and providing for their payment by taxation of the inhabitants. Five months later, on April 15, 1889, the Supreme Court of the State, in two laboured opinions, the one by Chief Justice Simpson and the other by Justice McIver, declared that, it having been decided in Floyd v. Perrin that the legislature could not authorize the township to levy a tax to pay the bonds, it could not ratify the proceedings of the township; but yet that the statute of 1888 was a constitutional exercise of the unlimited legislative power to authorize taxation for a public purpose, with the consent of the township. In each of the two cases, however, Justice McGowan, *627 who had dissented from the judgment in Floyd v. Perrin, delivered a concurring opinion in these words: "I concur. The meaning of the opinion of the court being that there is no necessity for the issue of any new bonds; but `the debt' fixed upon the several townships by the act of 1888 shall be represented by the bonds heretofore issued, to be paid according to the provisions of the act; and I am authorized to say that such is the view of the other members of the court." State v. Whitesides and State v. Neely, above cited.
As the debt thus held to be imposed upon the township by the act of 1888 was the debt represented by the bonds issued under the act of 1885; as the tax for the payment of that debt under the new act was to be levied upon the property in the township by county officials in substantially the same manner as under the earlier statutes; and as the constitution of the State did not authorize the legislature, with or without the consent of the township, to vest its corporate authorities with power to assess and collect taxes for any but corporate purposes; it is not easy to understand how the later taxation could be held constitutional while the earlier was held unconstitutional; or how the result in State v. Whitesides and State v. Neely could be reached without practically overruling Floyd v. Perrin.
There not being shown to have been a single decision of the state court against the constitutionality of the act of 1885 before the plaintiff purchased his bonds, nor any settled course of decision upon the subject, even since his purchase, the question of the validity of these bonds must be determined by this court according to its own view of the law of South Carolina.
This question, which is presented in different forms by the second and third questions certified, lies in narrow compass. The constitution of South Carolina of 1868 authorized the legislature to vest the corporate authorities of townships or other municipal corporations with power to assess and collect taxes "for corporate purposes." By the act of 1870, townships were deprived of the corporate powers with which they had been vested by the legislature immediately after the adoption of the constitution, but were still defined by their names and *628 boundaries. By the act of 1882, as amended by the acts of 1885 and 1887, it was enacted that any city, town, county or township, interested in the construction of the railroad company named, might subscribe for stock and issue bonds in aid of the building of the railroad; and that, for the payment of the bonds and coupons, taxes might be assessed and levied upon the property of the township; and all the counties and townships along the line of the railroad, or interested in its construction, were declared to be bodies politic and corporate, for the purposes of this act, and to be invested with the necessary powers to carry out its provisions, and to have all the rights and be subject to all the liabilities, in respect to any rights or causes of action growing out of its provisions.
To aid in the building of a railroad is a public purpose, and, being for the general welfare of the ordinary municipal corporations, such as counties, cities and towns, through which the road is to pass, is a corporate purpose, within the meaning of a constitutional provision vesting in the legislature power to authorize municipal corporations to assess and collect taxes "for corporate purposes." Livingston County v. Darlington, 101 U.S. 407, 411, 413; Harter v. Kernochan, 103 U.S. 562, 571; Anderson v. Santa Anna, 116 U.S. 356, 363; Bolles v. Brimfield, 120 U.S. 759; Johnson v. Stark County, 24 Illinois, 75, 88; Chicago &c. Railroad v. Smith, 62 Illinois, 268, 276; Nichol v. Nashville, 9 Humph. 252, 268; Brown v. Hertford Commissioners, 100 No. Car. 92.
This is well settled, as to counties, under the constitution of South Carolina. It was assumed by the Supreme Court of the State in State v. Chester & Lenoir Railroad, 13 So. Car. 290, 317, and in Connor v. Green Pond &c. Railway, 23 So. Car. 427, 436; and it was admitted by all the judges in Floyd v. Perrin. 30 So. Car. 1, 13, 19, 27. See also State v. Whitesides, 30 So. Car. 579, 584, and State v. Neely, 30 So. Car. 587, 604. It has also been affirmed, as to towns, by the Circuit Court of the United States for the District of South Carolina, and by the Circuit Court of Appeals for the Fourth Circuit. Darlington v. Atlantic Trust Co., 63 Fed. Rep. 76, and 68 Fed. Rep. 849.
*629 In Floyd v. Perrin, it was also admitted that townships, having been declared by the legislature in the act of 1885, in express words, to be bodies politic and corporate, must be held to be corporations. 30 So. Car. 12, 16, 25. But the ground on which the majority of the court in that case held that act to be unconstitutional was that the townships, having, under the existing statutes, no other corporate duty or right, except to subscribe to the railroad and to assess taxes to pay the subscription, were without any corporate purpose whatever, and therefore to authorize them to assess taxes to pay the subscription was in violation of the constitution.
We are unable to concur in that view, and are much better satisfied with the reasoning of the dissenting opinion. When a township has been created by law, as a territorial division of the State, with no express grant of corporate powers, and with no definition or restriction of the purposes for which it is created, we are of opinion that it is within the power of the legislature, at any time, to declare it to be a corporation, and to confer upon it such and so many corporate powers, appropriate to be vested in a territorial corporation for the benefit of its inhabitants, as the legislature may think fit; and that the act of 1885 was therefore a constitutional and valid act, as far as regards all the kinds of municipal corporations named therein  cities, towns, counties and townships.
In Weightman v. Clark, 103 U.S. 256, the statute held to be unconstitutional purported to confer the power to issue bonds in aid of the construction of a railroad upon school districts, established and existing for educational purposes only. In Lewis v. Pima County, 155 U.S. 54, a territorial statute, purporting to confer upon a county the power to issue similar bonds, was held unconstitutional, because the fundamental law limited obligations of any municipal corporation to such as should be "necessary for the administration of its internal affairs."
The result is, that the first question certified must be answered in the negative, and the second and third questions in the affirmative, and the fourth question becomes immaterial.
Ordered accordingly.