[Civil No. 2017.  Filed July 29, 1922.]

[208 Pac. 419.]

JESSE L. BOYCE, as Auditor of the State of Arizona, and HARRY S. ROSS, as Treasurer of the State of Arizona, Appellants, v. THE COUNTY OF PIMA, THE COUNTY OF YAVAPAI, THE COUNTY OF COCONINO and THE COUNTY OF MARICOPA, in the State of Arizona, Appellees.

1. COUNTIES — TERRITORIAL BONDS SUBSTITUTED FOR COUNTY BONDS, BUT PAYABLE BY COUNTIES, ARE PAYABLE FROM GRANT TO DISCHARGE COUNTY BONDS.—Where the territory had taken up county bonds previously validated by Act of Congress of June 6, 1896, and issued to the holders thereof territorial bonds, but the counties were not thereby relieved from liability, and were required to collect taxes to discharge the interest, and were obliged to pay the principal, the bonds were payable from the proceeds of the land granted to the state by Enabling Act of June 20, 1910, section 25, in trust for the payment of those county bonds.

2. MANDAMUS—ISSUES TO COMPEL STATE AUDITOR AND TREASURER TO PERFORM DUTIES UNDER ACT FOR DISCHARGE OF COUNTY BONDS FROM PROCEEDS OF LAND GRANT.—Under Acts of 1915 (2d Sp. Sess.), chapter 5, providing that moneys realized from the sale of lands granted by Congress in trust to pay county bonds should be a special fund, which by section 101 was to be devoted to the payment of the current interest, the reimbursement of the counties for previous interest payments and the retirement of the bonds, and under section 102, providing for the payment of current interest on the bonds, and section 103, providing for presenting claims by the counties for reimbursement, and imposing on the state auditor and state treasurer the duty, if the claims are found to be correct, to approve them, *mandamus* will issue on behalf of the counties to compel the auditor and treasurer to perform their duties under that act, unless the court was without jurisdiction of such proceedings or the act was unconstitutional.

3. COURTS—STATE COURT CAN ENFORCE OBEDIENCE BY STATE OFFICERS TO STATE STATUTE FOR ENFORCEMENT OF LAND GRANT TRUST.— The reservation by Congress, in granting certain lands to the state in trust, of the right of the Attorney General of the United States to institute suit in the United States courts to enforce the

provisions of the trust, does not deprive the state courts of jurisdiction to compel the performance by state officers of the duties imposed on them by state statute for the performance of the trust.

4. COURTS—STATE COURTS HAVE CONCURRENT JURISDICTION OVER TRUST UNDER ACT OF CONGRESS NOT GIVING EXCLUSIVE JURISDICTION.— Since there is nothing in the language of the Enabling Act of June 20, 1910, section 28, conferring exclusive jurisdiction to enforce the trust created by the grant of lands for the payment of county bonds, or to prevent its breach, upon the United States courts, the state courts have concurrent jurisdiction of any actions or proceedings arising out of the administration of the trust, especially where the Attorney General of the United States was making no objection to the method provided by the state legislature for the administration of the trust.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Affirmed.

Mr. Will E. Ryan and Mr. W. J. Galbraith, Attorney General, for Appellants.

Mr. George R. Darnell, County Attorney of Pima County, Mr. Ben B. Mathews, Deputy County Attorney of Pima County, Mr. Kirk T. Moore and Mr. E. B. Frawley, Mr. John L. Sullivan, County Attorney of Yavapai County, Mr. R. B. Westervelt, Deputy County Attorney of Yavapai County, Messrs. Clark & Clark, Mr. F. M. Gold, County Attorney of Coconino County, Mr. George W. Harben, Deputy County Attorney of Coconino County, Mr. C. B. Wilson, Mr. R. E. L. Shepherd, County Attorney of Maricopa County, Mr. L. M. Laney, and Messrs. Alexander & Christy, for Appellees.

ROSS, C. J.—This is an action of *mandamus* by the counties of Pima, Yavapai, Coconino, and Maricopa, against Jesse L. Boyce, auditor, and Harry S. Ross, treasurer, of the state, to compel said officers to audit, allow and pay their claims against a certain fund

known as the county bond land fund. Defendants, by way of answer, objected to the jurisdiction of the court, and demurred to the complaint on various grounds. The court, holding that it had jurisdiction, overruled all the demurrers and entered judgment in favor of the plaintiffs, as prayed for in their complaint. The appellants have appealed from the judgment.

The facts succinctly and briefly are that the plaintiff counties, at the times and in the amounts hereinafter stated, issued their bonds in the way of subsidies to certain named railroad corporations, in consideration of railroads already built, or promised to be built, in Arizona, to wit: By Pima county, July 1, 1883, 150 bonds, par value $150,000, to Arizona Narrow Gauge Railroad Company, pursuant to Act No. 35 of the Twelfth Legislative Assembly. By Yavapai county, between August 4, 1886, and December 31, 1886, 292 bonds, par value $292,000, to Prescott and Arizona Central Railway Company, pursuant to Act 81, Thirteenth Legislative Assembly. By Maricopa county, between April 12, 1887, to July 7, 1887, 200 bonds, par value $200,000, to Maricopa and Phoenix Railroad Company, pursuant to Act 47, Thirteenth Legislative Assembly. In May, 1891, Coconino county was created out of Yavapai county and assumed one-third of the subsidy bonds issued by Yavapai county, which amounted, at the time in principal and interest, to $152,975.50, for which Coconino county gave its bonds to Yavapai county, and hence Coconino's appearance in the suit.

In October, 1894, the Supreme Court, in *Lewis* v. *Pima County,* 155 U. S. 55, 39 L. Ed. 67, 15 Sup. Ct. Rep. 22 (see, also, Rose's U. S. Notes), held that the territorial act, under which Pima county bonds were issued, was void as in contravention of the organic law of the territory, and it was generally conceded the de-

fect of power applied equally to the issues by Yavapai and Maricopa counties. In other words, the effect of the court's decision in the Lewis case was that all of the bonds issued by the plaintiffs were invalid and not legal obligations.

In June, 1896, the Congress passed an act (Act Cong. June 6, 1896, c. 339, 29 Stat. 262) that validated all of said bond issues. This act of validation, in subsequent litigation, was upheld by the Supreme Court (*Utter* v. *Franklin,* 172 U. S. 416, 43 L. Ed. 498, 19 Sup. Ct. Rep. 183 (see, also, Rose's U. S. Notes), and the counties could do nothing except recognize and discharge such bonds as binding obligations.

The counties have accordingly paid in the way of interest large sums to the holders of these bonds. Yavapai county has redeemed a few of the original bonds. From time to time, prior to statehood, these bonds were taken up in exchange for territorial refunding bonds, under which arrangement the counties levied and collected taxes to meet the interest thereon, transmitting it to the territorial treasurer, who in turn paid over the interest to the bondholders.

In the enactment of the Act of June 20, 1910 (36 Stat. 557), providing for the admission of Arizona into the Union, the Congress took cognizance of all said bond issues, their original invalidity and the validation thereof, and in section 25 of the Enabling Act granted 1,000,000 acres of land to the state as trustee " . . . for the payment of the bonds and accrued interest thereon issued by Maricopa, Pima, Yavapai, and Coconino counties, . . . which said bonds were validated, approved, and confirmed by the act of Congress of June 6, 1896 (29 Stat. 262)," and it is provided by said act that if any remainder of land or proceeds is left, "after the payment of said debts," the same shall become a part of the permanent school fund of the state.

The state, as such trustee, through its land department, has accepted the 1,000,000 acres of land upon the terms of the grant and has sold and leased certain portions of the same, and at the time of the institution of the suit had on hand $235,000 realized therefrom in sales and leases.

It is to have this money applied, and other money that may be realized from time to time from the said 1,000,000 acre land grant, in the liquidation "of bonds and accrued interest thereon issued by" said plaintiff counties, that this suit is brought. For the purposes of the further presentation of the case, we shall choose to state the viewpoint of the plaintiffs. The contention of the counties is that this gift of 1,000,000 acres of land was intended as a reimbursement to them of any and all sums that they may have paid on account of said bond issues, or that they become obligated to pay by reason of the congressional validating act. We think we can discover in the language employed by Congress in making the grant, a purpose and intention to make these counties whole as against the original bonds issued by them, including both principal and interest. It is, in the language of the act, "for the payment of bonds and accrued interest thereon, issued by Pima, Yavapai, Coconino and Maricopa counties" that these million acres of land were granted to the state.

The fact that the territory of Arizona had taken up such bonds and issued to the holders thereof territorial bonds did not relieve the counties from the obligation to care for said indebtedness. As a matter of fact the different counties, as they had done before, after the refunding, continued to levy and collect taxes, to discharge the interest. The substitution of bonds of the territory for bonds of the counties did not, in fact, substitute debtors. The counties were still the debtors, obligated to pay the debts. The

clear and unmistakable purpose of Congress was to reimburse the counties every dollar they had been, or would be, out on account of said bond issues. The state, as such, has no other or further interest in the 1,000,000 acres granted to it, for the counties, than faithfully to discharge the trust imposed upon it and accept, "after the payment of said debts," anything left over, for the school fund of the state. It is not suggested the state is, or has, violated its trust in selling some of said lands and renting others, nor is it made clear to us just how the appellants would have the trustee act in the distribution of the trust funds on hand.

The legislature, in 1915, Second Special Session, in the Land Code, chapter 5, provides generally the manner of selecting, selling, leasing and otherwise disposing of the institutional lands granted to the state upon its admission to the Union. Therein it is provided that moneys realized from these railroad lands shall be a special fund and known as "county bonds land fund," section 94. By section 101, moneys in this fund are to be devoted:

"First, to the payment of the current interest of said bonds; second, to the reimbursement of the several counties for all interest accruing and paid thereon since date of issuance; third, to retire the said bonds when due."

Section 102 provides for the payment of current interest on such bonds, and section 103 provides the manner of presenting, by the counties, their claims for reimbursement of interest paid by them, and imposes the duty upon the state auditor and state treasurer, if the claims be found to be correct, to approve the same and make proper credits and allowances for said claim, to the county presenting the same. Thus we have the legislature of the state construing the grant of these lands in accordance with the contention

of the plaintiff counties. It would seem that the language of the grant itself, and the construction thereof, by the legislative department of state, ought to be a sufficient guide to the appellants, as to what course they should pursue, in the distribution and disposition of the funds realized out of the grant given to reimburse the counties for bonds validated by the act of Congress, dated June 6, 1896. The duty on the part of the appellants to audit and approve, if found correct, the claims of the plaintiff counties, against the county bonds land fund, was a duty specially enjoined, resulting from the office or offices held by the appellants, and the judgment of the court commanding them to proceed to perform this duty, was correctly and properly entered, unless the court was acting without jurisdiction or the legislation imposing the duty was violative of some constitutional provision.

This suggests some of the contentions of the appellants. The proposition is advanced that because the Congress, in the act granting certain institutional lands to the state, reserved the right to institute suits, through the Attorney General of the United States, in the United States courts, to enforce the provisions of the trust, no action or proceeding can be maintained in the state courts to compel the state's agents to do and perform the things the state legislature has provided they shall do in the execution of said trust. The mere statement of the contention condemns it. The duty sought to be enforced against the state treasurer and the state auditor is one imposed by a state law. Surely our courts have jurisdiction of questions concerning the duty and power of our state officers as conferred upon them by state legislation.

Besides there is nothing in the language of the act of Congress (section 28, Enabling Act of June 20,

1910), conferring exclusive jurisdiction, to enforce the trust, or to prevent its breach, upon the United States courts, and, that being so, the state courts have concurrent jurisdiction of any actions or proceedings arising out of the administration of the trust. Indeed the very last sentence of section 28, supra, quite clearly conveys the idea that the federal courts shall not have exclusive jurisdiction of actions or proceedings to enforce the trust therein created. The state itself may bring such action, or any citizen may do so, and have the question decided by the courts of the state.

We should not omit to state that the Attorney General of the United States is not objecting to the method provided by the legislature of Arizona for the administration of these railroad lands or the disposition of the funds realized therefrom. If the donor of these lands does not object to the manner of their administration by the state, as trustee thereof, through its legally constituted agent, it would seem that the officers of the state, with merely ministerial functions to perform, should not hesitate to perform them, rather than impose objections in behalf of one who is not complaining, but who seems to be satisfied.

Discovering no reason for reversing the judgment of the lower court, the order is that it be affirmed.

McALISTER and FLANIGAN, JJ., concur.