### STATE OF WASHINGTON et al. v. MARICOPA COUNTY, ARIZ. et al.

No. 11087.

Circuit Court of Appeals, Ninth Circuit.

Dec. 14, 1945.

---

[3] Cf. Remington's Revised Statutes of Washington, § 9209—3, Laws 1933, p. 283, § 3.

See, also, 143 F.2d 871.

Smith Troy, Atty. Gen. of Washington, Harold A. Pebbles and Lyle L. Iversen, Assts. to Atty. Gen., for appellant State of Washington.

David M. Wood, of New York City, and Gust, Rosenfeld, Divelbess & Robinette, of Phoenix, Ariz., for appellant Equitable Life Ins. Co.

John L. Sullivan, Atty. Gen. of Arizona, and Earl Anderson, Asst. Atty. Gen., for appellees Osborn et al.

Edwin Beauchamp, Co. Atty., and Leslie C. Hardy, Sp. Counsel, both of Phoenix, Ariz., and George Herrington and Orrick, Dahlquist, Neff, Brown & Herrington, all of San Francisco, Cal., for appellees Maricopa County et al.

Before GARRECHT, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellants are holders of highway improvement bonds issued by Maricopa County, Ariz., in the years 1919 and 1921. Incorporated in the bonds are specific due dates. Some of the bonds have matured, others have not. On demand of Maricopa County the Loan Commissioners of the state instituted proceedings to refund the unretired portions of the two issues on the view that the bonds were legally subject to call and refunding whenever such operation is to the profit of the state.[1]

Appellants sued in the district court asking that it be adjudged that the right to call the bonds prior to maturity did not exist when they were issued, and that the county is accordingly obligated to pay interest at the agreed rate until maturity.

---

[1] The public advantage accruing from the refunding is evidenced by the fact that the 1919 issue bears interest at the rate of 5½% per annum, that of 1921 at the rate of 6%, whereas the refunding bonds have been awarded on the basis of annual interest of 2¾%.

The claim is, primarily, that the refunding was had under authority of statutes first enacted in 1928 as part of a revision of the laws undertaken in that year. The findings and judgment below were to the contrary.

The call and refunding proceedings have been upheld by the Arizona Supreme Court in two cases, Maricopa County v. Osborn, 59 Ariz. 244, 125 P.2d 703, and Id., 60 Ariz. 290, 136 P.2d 270. These were mandamus suits to compel the Loan Commissioner to refund the county's indebtedness. On the basis of statutes in existence at the time of issue the court held the bonds subject to call. While appellants were not parties to these suits, briefs amici curiae were filed by counsel representing appellant Equitable Life Insurance Company. Later, one of the counsel for that company, in his capacity as a taxpayer, sued in the superior court of Maricopa county to restrain the delivery of the refunding bonds, in which action judgment went against him. There was no appeal. In each of the suits mentioned the principal contentions raised by the parties and amici curiae were identical with those here urged.

■ The statutes thought by the Arizona court to authorize the call were contained in Ch. I, Title LII, Ariz.R.S.1913. These statutes, in a more or less altered form, were subsequently codified in the Arizona Revised Code of 1928,[2] and are currently to be found in Art. 4, Ch. 10, Ariz.Code Ann.1939, in the language in which they appeared in the 1928 compilation. Appellants assert that these code provisions effect an impairment of the obligation of their contract.[3]

We set out on the margin in parallel columns the material portions of the two sets of statutes.[4]

Each of the bonds in question contains a declaration that it is issued "pursuant to

---

[2] Art. 4, Ch. 60, Ariz.R.C.1928.

[3] A subordinate point is argued, namely, that the resolutions of the county supervisors and the Loan Commissioners constituted subsequent legislation impairing the contract. The point is without merit and will not be noticed further than to say here that the resolutions were purely administrative in character. Cf. New Orleans Water-Works Co. v. Louisiana Sugar Ref. Co., 125 U.S. 18, 8 S.Ct. 741, 31 L.Ed. 607.

| [4] R.S.1913 | Ann.Code, 1939 |
| --- | --- |
| Par. 5252. "It shall be and is hereby declared the duty of the said loan commissioners to provide for the payment of the existing state indebtedness due, and to become due, or that is now, or may hereafter be authorized by law; and for the purpose of paying, redeeming, and refunding all or any part of the principal and interest of the existing and subsisting state legal indebtedness, and also that which may at any time become due, or is now or may be hereafter authorized by law, the said commissioners shall, from time to time, issue negotiable coupon bonds of this state when the same can be issued at a lower rate of interest than previously paid on state indebtedness and to the profit and benefit of the state." | § 10-401. "The governor, the state auditor and state treasurer, shall constitute the loan commissioners of the state of Arizona. They shall provide for the payment of the state indebtedness due, and to become due, now existing, or hereafter authorized; and for the purpose of paying, redeeming, and refunding all or any part of the principal and interest of the same, from time to time, issue negotiable coupon bonds of the state when they can be issued at a lower rate of interest than previously paid or when to the profit and benefit of state. Bonds issued under the provisions of this article shall not be taxed within this state." |
| Par. 5253. " * * *; and the faith and credit of the state is hereby pledged for payment of said bonds and the interest accruing thereon as herein provided." | § 10-402. "The faith and credit of the state shall be pledged for the payment of said bonds and the interest accruing thereon as herein provided." |
| Par. 5260. " * * *, and said loan commissioners shall provide for the redeeming or refunding of the county, municipal and school district indebtedness, upon the official demand of said authorities, in the same manner as other state indebtedness, and they shall issue bonds for any indebtedness now allowed, or that may be hereafter allowed by law, to said county * * *." | § 10-409. " * * *, the commissioners shall provide for the redeeming or refunding of such indebtedness in the same manner as other state indebtedness, and issue bonds of the state for any indebtedness allowed by law to be incurred by such county * * *. Such bonds shall be issued upon the faith and credit of the state only to the extent that it will cause to be levied and collected taxes for the payment of the principal and interest of such bonds, * * *." |

and in strict compliance with the Constitution of the State of Arizona, and the statutes thereof, including among others Chapter II of Title LII of the Revised Statutes of Arizona, 1913, Civil Code, and Chapter 31 of the Session Laws, Regular Session, 1917, and acts amendatory thereof and supplementary thereto."

The Arizona court in the first of the Maricopa cases pointed out that Title LII of the Revised Statutes of 1913 contained two chapters relating to state, county, and municipal indebtedness. The first chapter, embracing paragraphs 5251 to 5265, dealt with funding and refunding, the second with the original issuance of county, school district, and municipal bonds, no mention being made therein of their refunding. Both chapters were held to be in full force and effect when the bonds involved here were issued. Under paragraph 5252, contained in the first chapter, any bonds of the state issued while that section was in effect were held "redeemable and refundable whenever state bonds could be issued at a rate of interest sufficiently lower than that previously paid to render it profitable and beneficial to the state to issue them." [59 Ariz. 244, 125 P.2d 205.] As regards authority to refund in that contingency, the court found no difference between indebtedness of the state and indebtedness of the county, which latter included "any indebtedness now allowed, or that may be hereafter allowed by law," and not merely such as has matured. Paragraph 5260, authorizing the redemption of county bonds "in the same manner as other state indebtedness," was held to have the clear purpose of making it "the duty of the loan commission to refund a county's indebtedness, whether evidenced by bonds, or otherwise, when officially requested by the board of supervisors to do so and the bonds of the state can be sold at a rate of interest sufficiently lower than that the county was theretofore paying to render it profitable and beneficial to the county to issue them."

■■ The court's references to the law as subsequently revised were incidental, the references consisting variously of statements to the effect that the 1913 statutes were carried, in form or substance, into the 1939 code. The opinions infer that the revision effected no change in substance. If this be true no impairment can be spelled out, for it is a settled principle that where there is no subsequent legislation there can be no impairment of contract in the constitutional sense. Const.U.S. art. 1, § 10. Contracts are made with reference to existing law and can not be impaired by it, Cross Lake Shooting & Fishing Club v. Louisiana, 224 U.S. 632, 638, 639, 32 S.Ct. 577, 56 L.Ed. 924, even if the law has been given a changed construction by the state court. Tidal Oil Co. v. Flanagan, 263 U.S. 444, 44 S.Ct. 197, 68 L.Ed. 382.

■■ It has been held, Bacon v. Texas, 163 U.S. 207, 225, 16 S.Ct. 1023, 41 L.Ed. 132, that the question whether a subsequent codification of an existing statute was or was not a mere revision and continuation of existing law, and whether the changed phraseology properly called for a change of construction, are questions for the state court to determine. The holding there involved the contract clause. We have, however, independently considered the question, and are not persuaded that that later revision constituted new legislation on the subject. The presumption, certainly, is to the contrary, as will be evident from a reading of the appended note.[5]

■ In the effort to establish their point that there is subsequent legislation appellants stress alterations in the phraseology of paragraph 5260. This provided for the refunding of county indebtedness "in the same manner as other state indebtedness * * * now allowed, or that may be here-

---

[5] The legislation authorizing the 1928 codification provided for the appointment of a Code Commissioner "to revise and codify the laws of the State of Arizona." Session Laws 1925, c. 35, p. 106. The Act directs the Commissioner not to "undertake to make any change of existing laws, but [he] shall harmonize where necessary, reduce in language, and remove inconsistencies where the same are found to exist; it being the intention of this Act that said Commissioner shall in no manner assume to exercise legislative power * * *." It has been recognized in a number of Arizona cases that the purpose of the 1928 code was to condense language and avoid redundancy. The presumption has been indulged that when a word, a phrase, or a paragraph from the 1913 code is omitted from the code of 1928, the intent is rather to simplify the language without changing the meaning, than to make a material alteration in the substance of the law itself. Walker v. People's Finance & Thrift Co., 1935, 46 Ariz. 224, 49 P.2d 1005. To the same effect consult Peterson v. Central Ariz. Light & Power Co., 56 Ariz. 231, 107 P.2d 205; Melendez v. Johns, 51 Ariz. 331, 76 P.2d 1163. Compare Stewart v. Kahn, 11 Wall. 493, 20 L.Ed. 176.

after allowed by law, to said county," whereas the current codification provides for "the redeeming or refunding of such indebtedness in the same manner as other state indebtedness * * * allowed by law to be incurred by such county." The difference in phraseology appears to lie merely in the choice of words. We are not able to discover a distinction in principle.[6]

■ Another point urged is that in the codified statute relating to refunded county and municipal bonds it was, for the first time, expressly provided that they shall be issued upon the faith and credit of the state only to the extent that the latter will cause the necessary taxes to be levied for the payment of principal and interest. Appellants argue that this provision effected a change in substance. However, it appears that under the 1913 statute, also, the county continued after refunding to be the primary debtor. It was held in Boyce v. Pima County, 1922, 24 Ariz. 259, 208 P. 419, that the taking up of county bonds by the territory and its issuance to the holders thereof of territorial bonds did not relieve the county of the obligation to care for the indebtedness, the latter being still the debtor. And in the first of the two Maricopa cases the court held that under the 1913 statute the state did not pledge its faith and credit to the payment of county refunding bonds issued by the commission, the only obligation of the state being to see that taxes for their payment are levied and collected by the county. In any event it is not possible to see how this change, if there was one, can prejudice appellants, who are not entitled to refunding bonds but to cash.

■ What has been said serves at least to exhibit the questionable force of the contention that there is any subsequent law. We need not further pursue that inquiry. Even if doubts on the subject be resolved in favor of appellants' viewpoint, still we find no case of impairment under the contract clause. A study of the two Maricopa opinions discloses that decision was reached solely on consideration of the

statutes as they existed at the time the bonds were issued. Neither in terms nor by necessary implication was effect given to the provisions of the later codes. There remains only the claim, vigorously urged by appellants, that the Arizona court misconstrued the 1913 statutes. Of itself, however, this claim presents no federal question.

The applicable principle, frequently declared by the Supreme Court, has not perhaps been better stated than by Mr. Justice Van Devanter speaking for the Court in Cross Lake Shooting & Fishing Club v. Louisiana, 224 U.S. 632, 638, 639, 32 S.Ct. 577, 579, 56 L.Ed. 924. After quoting the clause of the constitution declaring that no state shall pass any law impairing the obligation of contracts, he said: "This clause, as its terms disclose, is not directed against all impairment of contract obligations, but only against such as results from a subsequent exertion of the legislative power of the state. It does not reach mere errors committed by a state court when passing upon the validity or effect of a contract under the laws in existence when it was made. And so, while such errors may operate to impair the obligation of the contract, they do not give rise to a Federal question. But when the state court, either expressly or by necessary implication, gives effect to a subsequent law of the state whereby the obligation of the contract is alleged to be impaired, a Federal question is presented. In such a case it becomes our duty to take jurisdiction and to determine the existence and validity of the contract, what obligations arose from it, and whether they are impaired by the subsequent law. But if there be no such law, or if no effect be given to it by the state court, we cannot take jurisdiction, no matter how earnestly it may be insisted that the court erred in its conclusion respecting the validity or effect of the contract; and this is true even where it is asserted, as it is here, that the judgment is not in accord with prior decisions on the faith of which the rights in question were acquired. Knox v. Exchange Bank, 12 Wall. 379, 383, 20 L.Ed.

6 In considering the verbiage of the 1913 statute, namely, "any indebtedness now allowed, or that may be hereafter allowed by law," the Arizona court construed it as meaning any indebtedness "that has been fixed or established, and not merely that which has matured." Maricopa County v. Osborn, 59 Ariz. 244, 252, 125 P.2d 703.

Bouvier's law dictionary defines "allow" as "To sanction either directly or indirectly. * * * To permit." 1 Bouv.Law Dict., Rawle's Third Revision, p. 181. In a number of cases the term "allowed by law" has been held to be equivalent to "fixed by law." Cf. Hinds v. Marmolejo, 60 Cal. 229; Guild v. First Nat. Bank, 4 S.D. 566, 57 N.W. 499.

[287], 414, 415; Central Land Co. v. Laidley, 159 U.S. 103, 111, 112, 16 S.Ct. 80, 40 L.Ed. 91, 94, 95; Bacon v. Texas, 163 U. S. 207, 220, 221, 16 S.Ct. 1023, 41 L.Ed. 132, 137, 138; Turner v. [Board of Com'rs of] Wilkes County, 173 U.S. 461, 19 S.Ct. 464, 43 L.Ed. 768; National Mutual Building & Loan Ass'n v. Brahan, 193 U.S. 635, 647, 24 S.Ct. 532, 48 L.Ed. 823, 828; Hubert v. New Orleans, 215 U.S. 170, 175, 30 S.Ct. 40, 54 L.Ed. 144, 147; Fisher v. New Orleans, 218 U.S. 438, 31 S.Ct. 57, 54 L. Ed. 1099; Missouri & Kansas Interurban Railway Co. v. Olathe, 222 U.S. 187, 32 S.Ct. 47, 56 L.Ed. 156."

In Bacon v. Texas, 163 U.S. 207, 216, 16 S.Ct. 1023, 1027, 41 L.Ed. 132, the rule is stated thus: "If the judgment of the state court gives no effect to the subsequent law of the state, and the state court decides the case upon grounds independent of that law, a case is not made for review by this court upon any ground of the impairment of the contract." Compare also Lehigh Water Co. v. Easton, 121 U.S. 388, 392, 7 S.Ct. 916, 30 L.Ed. 1059.

It is true that the decisions announcing this principle were on writs of error to the state courts; but the rule appears not to be different where the case originates in the federal court. New Orleans Waterworks Co. v. Louisiana, 185 U.S. 336, 345, 22 S.Ct. 691, 46 L.Ed. 936.

Two additional points are urged neither of which presents a federal question, but since jurisdiction exists on diversity grounds we may consider them. One relates to ratification acts passed by the state Legislature in 1921 in which the bonds were declared valid and free from any defect or invalidity by reason of acts or omissions of the supervisors in calling and holding the elections.[7] All acts and parts of acts in conflict with the ratification legislation were declared repealed. It is claimed that the ratification approved the bonds in the form issued and that if the terms thereof were modified by the provisions of Chapter I, Title LII, R.S.1913, then the ratification effected a repeal of those provisions.

The purpose of the ratification was to end pending litigation, and doubtless it was intended to remove mooted questions as to the validity of the bonds. There is nothing novel in remedial or curative statutes of this nature, the aim or effect of which is merely to remove legal obstacles that may be thought to exist. McNair v. Knott, 302 U.S. 369, 372, 58 S.Ct. 245, 82 L.Ed. 307. Consult 6 McQuillin Municipal Corporations § 2469, p. 198. To say the most for it, the claim that the 1921 legislation took away the existing right to refund is far fetched. Such was not the purpose of these special acts, and there is no good reason for supposing that they had that effect. Compare Utter v. Franklin, 172 U.S. 416, 19 S.Ct. 183, 43 L.Ed. 498, and Yavapai County v. McCord, 6 Ariz. 423, 59 P. 99.

Appellants bought the securities on the open market and paid a premium for them. It is contended that the county is now estopped from asserting that the bonds, in the form written, are subject to call before maturity. However, as has been noted, the bonds provided on their face that they were issued pursuant to the Arizona statutes; and purchasers of municipal bonds are bound, at their peril, to take notice of the existence and terms of the law from which it is claimed the power to issue them is derived. National Bank of Republic v. City of St. Joseph, C.C., 31 F. 216; Catholic Order of Foresters v. North Dakota, 67 N.D. 228, 271 N. W. 670, 109 A.L.R. 979; Anthony v. Jasper County, 101 U.S. 693, 25 L.Ed. 1005; Ogden v. Daviess County, 102 U.S. 634, 26 L.Ed. 263; Northern Bank v. Trustees of Porter Township, 110 U.S. 608, 609, 618, 4 S.Ct. 254, 28 L.Ed. 258. At bottom the estoppel argument is that appellants were misled because some of the statutes referred to in the bonds were subsequently construed in a manner different from that in which appellants think they should be construed. That, however, is a peril which the purchaser necessarily assumes, compare National Bank of the Republic v. City of St. Joseph, supra. We may add that the fact the bonds bore a definite due date is not at all inconsistent with the existence in the maker of the right to call them before maturity.

Affirmed.

---

[7] Chaps. 54 and 86, Ariz.Sess.Laws 1921.