ROBERTS & CO. v. CITY OF PADUCAH.

(Circuit Court, D. Kentucky. June 27, 1899.)

1. MUNICIPAL CORPORATIONS—MODE OF PROCEDURE TO REFUND INDEBTEDNESS —KENTUCKY STATUTES.

There is nothing in the statutes of Kentucky relating to cities of the third class which requires that the city council, in making provisions for the refunding of an indebtedness of the city, shall proceed by ordinance, rather than by resolution, and in the absence of such requirement a resolution is a proper method of procedure in such case.

2. SAME—RESOLUTIONS OF COUNCIL—MODE OF PASSAGE.

Ky. St. § 3304, relating to cities of the third class, and providing that every ordinance, resolution, or measure involving an appropriation or expenditure of money shall, within three days after its "final passage," be engrossed and presented to the mayor for his approval, does not require, by implication, that such a resolution shall be passed at two separate meetings of the council, as is provided in case of ordinances.

3. SAME—CONTRACT FOR SALE OF BONDS—VALIDITY.

Ky. St. § 3263, which requires that, in all issues of bonds by a city, provision shall be made for their redemption at the option of the city after

five years, does not render a contract by a city for a sale of bonds to be issued invalid on its face, as in excess of the power of the city, because of a provision therein that the bonds shall run for 30 years; the presumption being that the statutory requirement was an implied condition of the contract.

On Demurrer to Petition.

Bloomfield & Crice, for plaintiff.

R. T. Lightfoot, for defendant.

EVANS, District Judge.    The plaintiff, a corporation existing under the laws of the state of New York, and doing business in the city of New York, in its petition, as amended, in substance alleges, among other things, that in 1852 the defendant subscribed for $45,000 of the capital stock of the New Orleans & Ohio Railroad Company, and thereafter issued its bonds for $45,000, bearing interest at the rate of 6 per cent. per annum, in payment of the subscription, and delivered the bonds to the railroad company; that on the 9th day of March, 1898, said indebtedness was a valid and subsisting one against the defendant, which would mature and become payable on July 1, 1898; that, being authorized by law to do so, the defendant in 1887 subscribed for $100,000 of the capital stock of the Chicago, St. Louis & Paducah Railway Company, and in payment therefor duly and lawfully issued and delivered to the said railway company $100,000 of its bonds, dated December 1, 1888, payable to bearer 30 years thereafter, interest payable semiannually at the rate of $4\frac{1}{2}$ per cent. per annum, but with the right reserved in the bonds to pay the same and accrued interest at any time after 10 years after date; that the bonds, being negotiable commercial paper, passed into the hands of various and numerous holders; that the defendant was desirous of refunding at a lower rate of interest the entire indebtedness of $145,000, and ordered the same refunded by a sale of its 30-year bonds, with interest thereon at $4\frac{1}{4}$ per cent. per annum, payable semiannually; that defendant did on March 9, 1898, sell, and agree and promise to deliver, to the plaintiff, duly and properly executed, $45,000 of its bonds, payable at 30 years, bearing $4\frac{1}{4}$ per cent. per annum interest, payable semiannually, at the price of par and accrued interest up to date of delivery, which was fixed at July 1, 1898; that defendant did sell and promise to deliver to plaintiff on December 1, 1898, at New York, its bonds to the amount of $100,000, in denominations of $1,000 each, payable to bearer, and due at 30 years, with interest at the rate of $4\frac{1}{4}$ per cent. per annum, payable semiannually, the proceeds to be used to pay the $45,000 and the $100,000 of the defendant's bonds outstanding as aforesaid; and that the contract between the plaintiff and defendant was made in this manner, viz.:    The plaintiff, on the day of its date, made the defendant an offer in writing, as follows:

"Roberts & Co., #31 Nassau Street.

"New York, March 9th, 1898.

"To the Mayor and Common Council of the City of Paducah, Ky.—Gentlemen:   Your city has outstanding $45,000 N. O. & O. R. R. 6% bonds, subject to call July 1st, 1898; $100,000 C., St. L. & P. 4½% bonds, subject to call December 1st, 1898.   We hereby propose to buy of the city one hundred and forty-

five thousand ($145,000) dollars of bonds to be issued to refund same. Said refunding bonds to be dated when issued; to mature thirty years from date; to bear four and one-quarter (4¼) per cent. interest per annum, evidenced by semiannual coupons. Principal and interest to be payable in New York. Said 'bonds to be issued on lithographed blanks, and to be of the denomination of $1,000 each. We agree to pay for same par and accrued interest, or at that rate; that is, for each one thousand dollar bond we will pay one thousand dollars, and whatever interest may have accrued upon that amount from date of bond to date of delivery to us. Said bonds to be delivered to us, or to our assigns, in New York City; delivery to be made as follows: $45,000 thirty-year 4¼% refunding bonds on July 1st, 1898; $100,000 thirty-year 4¼% refunding bonds on December 1st, 1898. The proceeds of said refunding bonds to be deposited by the city as a special trust fund, to be used in payment of bonds to be refunded, and 'for that purpose only. Legality and regularity of refunding bonds, all papers pertaining to same, and the details of refunding, to be approved by our attorneys. The city council pledging itself to pass, and the mayor agreeing to sign, all ordinances necessary to the issue of such refunding bonds and the completion of such refunding; also, to furnish our attorneys with certified copies of all papers necessary to establish the legality of said refunding bonds. The city council agreeing to pass a resolution to set aside as a sinking fund the $220,000, par value, of railroad stocks owned by the city; said sinking fund to be carried as an offset to the city debt, and the proceeds of each block of stock, when sold, to be held as a fund for the retirement of the outstanding bonds. We agree to furnish the necessary blank bonds without cost to the city. Acceptance of this proposition by resolution of the city council shall constitute a contract between the city and ourselves for the performance of the respective obligations herein referred to.

"Roberts & Co."

The plaintiff also states: That defendant, by its mayor and common council, passed the following resolution:

"Be it resolved by the common council of the city of Paducah, Ky., that the proposition of Roberts & Company, of New York, for the purchase of one hundred and forty-five thousand ($145,000) dollars of refunding bonds to be issued by the city of Paducah in the manner and form, and upon the basis, set forth in said proposition,—that is, the payment of par and accrued interest for thirty (30) year four and one-quarter (4¼) per cent. refunding bonds,—be, and the same is hereby, accepted; and the mayor of said city is hereby instructed to sign an acceptance of said proposition for and on behalf of said city, and the city clerk is instructed to attest the execution thereof by the corporate seal and his signature.

"Adopted March 9th, 1898.                              .W. H. Patterson,
"[Seal.]                                      Council Clerk of the City."

And that, pursuant to said resolution, the mayor accepted the offer of the plaintiff, in writing of the following tenor:

"Under and by virtue of the foregoing resolution adopted by the common council of the city of Paducah at its meeting held in the council chamber on the 9th day of March, 1898, I, James M. Lang, as mayor of the city of Paducah, hereby accept the foregoing proposition of Roberts & Company, for and on behalf of said city.

"Dated at Paducah, Ky., this 9th day of March, 1898.

"James M. Lang,
"[Seal.]                       As Mayor of the City of Paducah, Ky."

The plaintiff further alleges:

"That the defendant city of Paducah, by its mayor and common council, received said offer of plaintiff to purchase said bonds, as set out in plaintiff's petition, and defendant, the city of Paducah, by its mayor and common council, did on the 9th day of March, 1898, duly accept plaintiff's offer, and did sell and agree to deliver to plaintiff its $45,000 of bonds on July 1, 1898, and its $100,000 of bonds on December 1, 1898, at the price and according to the terms

of plaintiff's offer therefor. That the defendant, city of Paducah, on the 9th day of March, 1898, by its resolution, in writing, duly and regularly passed and adopted by its mayor and common council at its meeting of said mayor and common council at its council chambers, in the city of Paducah, Ky., accepted said offer, and all the terms thereof. That the said resolution was duly passed and adopted by the mayor and common council on a call of the yeas and nays, and by a vote of over two-thirds of all the members of the common council voting yea therefor, all the members of the council being present and voting unanimously for said resolution, accepting plaintiff's offer as aforesaid; and said resolution so passed by the common council was signed and approved by the mayor of the city of Paducah at the time, and was duly and regularly spread on the journal and proceedings of said council, and was duly and properly signed and approved by the mayor of the city of Paducah: and the said mayor and common council caused said resolution to be certified by the clerk of the common council under the seal of the city, and the said mayor, for and on behalf of said defendant, as directed by said resolution, signed and accepted same, as set out in terms in the plaintiff's petition. Plaintiff states that said resolution accepting plaintiff's order, and selling to plaintiff said bonds as aforesaid, was certified by the mayor and clerk, and delivered to plaintiff, and the plaintiff received same, and the sale of said bonds by the defendant to plaintiff was thereby complete and absolute, and plaintiff in good faith proceeded to carry out its contract, and the defendant, city of Paducah, delivered, about the time required for delivery, and the plaintiff received from the city of Paducah, its $45,000 of bonds, paying the city its $45,000 therefor; but as to the one hundred $1,000 bonds agreed and contracted to be delivered on December 1, 1898, by the defendant to plaintiff, the city failed and refused to deliver same, or any part thereof, although by plaintiff demanded of defendant at the time, and still fails and refuses to deliver said bonds, or any of same, to plaintiff. Plaintiff states, after it purchased of defendant said one hundred $1,000 bonds, on the 9th day of March, 1898, acting in good faith on defendant's promise and agreement to deliver same to plaintiff, in the city of New York, N. Y., on the 1st day of December, 1898, it placed and sold said one hundred $1,000 bonds for the market price at the time, to be delivered, $109,915; that this was the market value of said bonds at said time and place where defendant contracted to deliver same; that the market value of said bonds on the 1st day of December, 1898, was $109,915 at the time and place defendant contracted and faithfully promised and agreed to deliver same to plaintiff, and this was the price and sum said bonds were sold for by plaintiff; that the difference between the purchase price of said bonds and the market price thereof, at the time and place of delivery, was $9,915; and that, by reason of defendant's failure and refusal to deliver said bonds as it agreed and contracted to do, the plaintiff has been damaged in the full sum of $9,915."

The defendant has filed a general demurrer to the petition as amended, and very important questions are raised, with which the court has had some difficulty. They depend for their determination upon the provisions of article 4 of chapter 89 of the Kentucky Statutes, concerning cities of the third class, one clause of which (section 3256) provides that the article "shall be liberally construed by the courts." It may aid in the investigation of the questions raised to ascertain— First, what the city agreed to do in this instance; second, whether it made the agreement in such a manner as to be binding upon it, if authorized by law; and, third, whether what was done was within the lawful power of the city.

Upon the first question the writings themselves leave no doubt. The city agreed to issue and sell to plaintiff its bonds, at par and interest, in the manner and upon the conditions set forth in the written offer of March 9, 1898. And it may be assumed that there was a laudable desire on the part of the city to refund its indebtedness at a

lower rate of interest, and that the agreement made was for the purpose of accomplishing that object.

Upon the second point it is insisted by defendant that the statute requires that everything done by the city which involves the expenditure of money must be done, and that it can alone be done, by an "ordinance" passed by the common council at each of two different meetings, and that the attempt to do it in this instance by "resolution" passed only at one meeting of the common council cannot bind the city. It is true that section 3279 does provide that "no ordinance" shall take effect or be binding unless passed in that manner, but the court reads nowhere in the article referred to any requirement that expenditures of money by the city, or provision for funding the city's debts, shall be made by ordinance only. Indeed, no special way of acting in such a case is pointed out. Section 3290 authorizes the city to pass ordinances for 40 different and important governmental purposes,—such, for example, as regulations for imposing license taxes, and otherwise raising revenue, for the making of street improvements, etc., but in no way mentions the legislative manner of merely providing for paying the city's debts or expending its money. Although authorizing in several ways the issue of bonds, the statute nowhere limits the proceeding for doing so to "ordinances," as distinguished from "resolutions." On the contrary, section 3265 vests all legislative power in the common council, and section 3284 reads as follows:

"Subject to the limitations imposed by the constitution and this act the council shall have the power to contract debts, and to borrow money and issue bonds of the city therefor, and to control the finances and property of the city. The common council shall also have the power to issue bonds in renewal of any bonds theretofore lawfully issued, and to fund any floating indebtedness of the city lawfully contracted. No bonds of the city shall be sold below par."

It may properly be said in this connection that the only part of the state constitution which seems to have any pertinency to the discussion of the demurrer (however much sections 157 and 158 may possibly become important in subsequent stages of the case) is section 162, which provides that:

"No county, city, town or other municipality, shall ever be authorized or permitted to pay any claim created against it, under any agreement or contract made without express authority of law, and all such unauthorized agreements or contracts shall be null and void."

The demurrer admits that defendant on March 9, 1898, owed the $145,000 outstanding bonds described in the pleadings, and desired to refund them. It also admits that the mayor signed and affixed his official seal to the resolution passed in this instance, which was at least meant to begin an attempt to provide for the desired refunding, and also that the resolution accepting the plaintiff's offer was passed by the council by a viva voce vote, as these two acts were required, respectively, by sections 3242 and 3275 of the statutes.

The most strongly urged contention, however, of the defendant, is based upon what it insists is the proper construction of section 3304, which requires that:

"Every ordinance and every resolution, or measure, appropriating or involving the expenditure of money, and every grant of any license or privilege or

franchise shall, within three days after its final passage, be correctly and legibly engrossed by the clerk and presented to the mayor for his approval."

It is insisted that the use of the words "final passage" necessarily means the requirement of a second passage by the council. The contention is probably correct, so far as it applies to "ordinances," and to instances where the common council acts upon the subject through the means of an ordinance; but it seems to the court that the council can act upon the subject either by resolution or ordinance, and that in the former case the words "final passage" mean no more than the single word "passage" would mean. When the phrase is construed in reference to the different things referred to, namely, ordinances and resolutions, in connection with the other provisions of the statutes, its meaning presents no difficulty. Its meaning, however, cannot be expanded so as to require that a mere resolution shall be passed at two different meetings before it can be presented to the mayor, nothing else in the statute indicating any such purpose upon the part of the legislature.

From these considerations, it seems to the court entirely clear that it is competent for the common council of a city of the third class to act, upon the matters presented by the plaintiff's proposition, either by ordinance or by resolution, at the option of the council. The authorities, as well as the reason of the thing, seem to make clear the distinction that upon all matters providing permanent rules for the good government of the city, and particularly upon the 40 different subjects mentioned and provided for in section 3290, the common council should act by ordinance, and, indeed, that it is at liberty to act in that manner in regard to all matters of importance; but, where there is nothing in the statute requiring it, it is not limited to ordinances in legislative enactments in regard to other matters,—particularly in emergencies where a single thing is to be provided for, or where it regards more expeditious measures as being necessary or proper. See Title "Ordinance," 17 Am. & Eng. Enc. Law, and the authorities there collected.

It remains only to be seen whether what was in fact done in this instance was within the lawful power of the city, under a proper construction of the statutes. It is objected that the agreement is vitiated by either one of two of its provisions, namely, those which require, respectively, that the bonds and papers shall be approved by the plaintiff's counsel (which seems to the court to be but a reasonable condition), and that the bonds shall run for 30 years, whereas section 3263 expressly requires that, in all issues of bonds by the city, provision shall be made for their redemption at the option of the city after 5 years. This objection does not seem to the court to have much force as coming from the defendant, which, in issuing the bonds, would be compelled to follow and observe the provisions of that section; and it is fairly to be inferred, at least upon demurrer, that, while using general terms, the parties contracted with reference to that provision of the statute which thereby became a necessary element of their agreement. If bonds issued under such an ordinance as that section of the law requires were tendered in discharge of the agreement, and were refused by the plaintiff, an important question might arise, which

does not now concern defendant. It seems to the court, therefore, that there was authority upon the part of the city to agree upon the essential things embraced in the contract sued on.

Another clause of the plaintiff's proposal, not much if at all noticed by counsel, may become of much more importance in the progress of this litigation. It is the one which pledges the common council to pass, and the mayor to sign, all ordinances, etc., necessary to carry out the agreement. The effect of this provision, in connection with the difficulty, if not impossibility, of making actual sales to third persons of unissued bonds, or of bonds the existence of which was so far in the future and dependent upon so many contingencies as these were, and the difficulty of having a "market price" for them under the circumstances of this case, and whether they were, in fact and in the proper sense, renewal bonds at all, although there was a pledge made to use the proceeds of their sale to pay off existing debts, may hereafter develop very important, not to say troublesome, questions, as to the measure of damages; but on the demurrer, which assumes all the plaintiff's allegations to be true, it seems to the court that at least a cause of action is stated, whatever may hereafter turn out to be the proper criterion of damages for a violation of the agreement. And it should not be altogether overlooked that there was no trouble made by the city about the $45,000 lot of bonds, where the reduction in interest was considerable, though there has been as to the others, in which there was only one-fourth of 1 per cent. per annum reduction. The demurrer to the petition as amended is overruled.