No. 24,151.

THE STATE OF KANSAS, ex rel. E. A. ENRIGHT, as County Attorney, *Appellant*, v. THE CITY OF KANSAS CITY, *Appellee*.

SYLLABUS BY THE COURT.

CITY OF FIRST CLASS—*Internal Improvement Bonds—Privilege of Prepayment — Construction of Statutes— Declaratory Judgment.* A declaratory judgment of the district court, interpreting chapter 123 of the Laws of 1921, and declaring that internal-improvement bonds of cities of the first class, bearing interest at a rate not exceeding five per cent per annum, need not contain privilege to prepay such bonds at the end of five years from date of issue, affirmed.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed February 24, 1922. Affirmed.

*Richard J. Hopkins,* attorney-general, and *E. A. Enright,* county attorney, for the appellant.

*R. J. Higgins,* and *H. J. Smith,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was commenced pursuant to the statute relating to declaratory judgments (Laws 1921, ch. 168), to obtain an adjudication respecting power of the city to issue bonds. The controversy related to authority of the city to issue internal-improvement bonds, bearing interest at a rate of not more than five per cent per annum, without reserving privilege of prepayment at the expiration of five years. The district court declared the privilege need not be reserved, and the state appeals.

Previous to the year 1921, cities of the first class generally, and the city of Kansas City, were authorized to issue internal-improvement bonds bearing interest at a rate not exceeding five per cent per annum. One of the statutes on the subject reads as follows:

"Whenever the mayor and council may cause any street or alley in such city to be graded, regraded, curbed, recurbed, guttered, reguttered, paved, repaved, macadamized or remacadamized, or any sewer to be constructed, the

expense of which is chargeable to the adjacent property, or cause the areas formed by the intersection of streets and alleys to be graded, regraded, curbed, recurbed, paved, repaved, macadamized, or remacadamized, they may, in their discretion, provide for the payment of the cost thereof by installments, instead of levying the entire tax or special assessments for such cost at one time; and for such cost they may issue internal-improvement bonds of the city, payable in ten equal installments of equal amounts each year, none of which bonds, nor any of the installments thereof, shall run longer than ten years, nor bear interest exceeding five per centum per annum. . . .

"Where improvement bonds are isued under this act for improvements the cost of which is by law, charged by special assessment against specific property, the mayor and council shall levy special assessments each year sufficient to redeem the installment of such bonds next thereafter maturing; . . .

"Such special assessments shall be made upon the lots or pieces of land chargeable for the cost of such improvements respectively, and shall be levied and collected in the same manner as other taxes; . . ." (Gen. Stat. 1915, § 1243.)

Certain bonds could not be sold for less than par. At the legislative session of 1921, the following measure was placed on the statute book:

*"Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. That in all cities of the first class the mayor and council or board of commissioners may issue internal improvement bonds in all cases where they are now authorized under existing law of the state of Kansas so to do, in payment for the grading, paving, macadamizing or curbing of streets, construction of sewers, park improvements, and in payment of land and other damages in all condemnation proceedings. Such bonds to draw interest not to exceed six per cent per annum, but shall contain a privilege to prepay said bonds at the end of five years from date thereof.

"SEC. 2. All parts of acts in as far as they relate to cities of the first class, the interest to be charged on internal improvement bonds, are hereby repealed." (Laws 1921, ch. 123.)

If this statute leaves standing all the various sections of the various statutes so far as they authorize bond issues for the purposes named, but repeals the interest provisions of those statutes, inserts in each one a new interest provision, and inserts in each one a provision relating to prepayment, the act is simply amendatory. In the statutes providing for issuance of internal-improvement bonds, the word "five" in the interest provision is stricken out, the word "six" is inserted, and a provision for prepayment of the bonds is added. This interpretation would render the act void, as forbidden by section 16, article 2 of the constitution, which reads as follows:

"No law shall be revived or amended unless the new act contain the entire

act revived or the section or sections amended, and the section or sections so amended shall be repealed." (Gen. Stat. 1915, § 156.)

This being true, the legislature must have had something else in mind.

The occasion for the law is matter of common knowledge. When the legislature met, the financial situation in the United States was such that cities could not market five per cent bonds at a price even approaching par, and greatly needed improvement work was prohibited. Presumably the legislature desired to obviate this mischief. The very simple remedy was, to meet the transient situation by authorizing six per cent bonds which might be taken up when conditions improved. The practical consequences of any other interpretation render it quite certain the legislature did not intend them. The customary method of financing public improvements, employed for years to the satisfaction of the inhabitants and governing bodies of cities, would be discarded, and much confusion, if not actual embarrassment, would result. The city desires to make extensive improvements, for which it must issue bonds to be paid by levy and collection of internal-improvement assessments. There is no law authorizing refunding of such bonds in five years. The answer of the city, confessed by the state, discloses that the city can now sell five per cent bonds at a premium; privilege of short-time prepayment operates in the sale of bonds as a discount of one-half of one per cent; and if the city must write into proposed bonds privilege of prepayment, the aggregate loss on bond issues for the year 1922 will be about $25,000.

The court concludes the first sentence of section one of the act of 1921 recognizes and preserves existing law and makes it the basis of further legislation. The second sentence authorizes cities to issue bonds at a higher rate of interest than existing laws permitted, not exceeding six per cent per annum, such bonds to contain privilege of prepayment. The second section does no more than render inapplicable to bonds issued under section one the limitations respecting interest contained in existing laws. So considered, the statute is valid, and has a scope and purpose of its own as a needed supplement to existing law.

The declaration of the district court is consonant with the views which have been expressed, and it is affirmed.

The proceedings in this case serve to illustrate operation of the

declaratory judgment act. Execution of the city's internal-improvement program placed it in this dilemma: If privilege of prepayment were not written in the bonds, the city and its officers were exposed to prosecution by the state for abuse of corporate power and violation of law, and the securities might not be marketable. If privilege of prepayment were written in the bonds, a heavy financial burden would be placed on the taxpayers, perhaps unnecessarily. Formerly, the city would have been compelled to choose one course or the other, and abide the consequences. The law officers of the state could not give a binding interpretation of the statute and, because of its ambiguity, could not consent to the course which the city claimed it was authorized to pursue. Therefore, a controversy existed justiciable under the declaratory judgment act. The action was commenced in the district court on February 7, 1922, and the defendant answered instanter. The cause was heard on the petition and answer, and a stipulation that the pleadings stated the facts. The declaration of the district court was rendered on February 7, and the appeal was lodged in this court on February 10. This court was in session when the appeal was filed. Because of the public importance of the question involved, the cause was advanced for immediate hearing, and on February 10 it was submitted for final decision, on oral argument and briefs of counsel which accompanied the appeal papers. The city may now proceed with its improvements without any of the embarrassments, and without any of the delay which would have been encountered if the remedy of declaration of right had not been available.