[Civil No. 4489. Filed May 4, 1942.]

[125 Pac. (2d) 703.]

MARICOPA COUNTY, a Municipal Corporation, Plaintiff, v. SIDNEY P. OSBORN, Governor of the State of Arizona; ANA FROHMILLER, State Auditor and JOE HUNT, State Treasurer, Constituting the LOAN COMMISSIONERS OF THE STATE OF ARIZONA, Defendants.

Mr. Richard F. Harless, County Attorney, and Mr. Harold R. Scoville and Mr. E. G. Frazier, Deputies County Attorney, for Plaintiff.

Mr. Joe Conway, Attorney General, and Mr. Earl Anderson, Special Assistant Attorney General, for Defendants.

Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, Messrs. Cox & Cox, and Mr. Herbert Watson, *Amici Curiae.*

McALISTER, J.—In response to a petition by the plaintiff, Maricopa county, Arizona, this court issued

an alternative writ of *mandamus* directing the loan commission of the state, composed of the governor, auditor and state treasurer, to refund certain bonded indebtedness of Maricopa county or show cause why it has not done so, and in reply to the writ the loan commission moves that the petition be dismissed upon the ground that it does not state facts upon which any relief can be granted.

The sufficiency of the petition must be determined by the facts set up therein and these are as follows: On June 15, 1919, Maricopa county issued its bonds in the sum of $4,000,000, bearing interest at the rate of 5½ per cent per annum and maturing over a period of twenty years, beginning June 15, 1930, for the purpose of improving its public highways, and when the petition of plaintiff was filed there remained unmatured and unpaid of this issue bonds in the sum of $2,100,000. And on January 15, 1921, the same county issued additional bonds in the sum of $4,500,000 bearing an annual interest rate of 6 per cent. and maturing over a period of twenty years, beginning January 15, 1931, also for improving its public highways, and when plaintiff's petition was filed there remained of this amount unmatured and unpaid bonds aggregating $2,800,000.

These bonds, 8,500 in number, each in the denomination of $1,000, were payable on the date named therein, the interest being due semi-annually. The first 100 bonds of the first issue of 4,000 were payable on June 15, 1930, and the last 300 on June 15, 1949, but 100 or more of them matured on June 15 of each of the intervening years. The first 100 of the second issue of 4,500 became payable on January 15, 1931, and the last 500 on January 15, 1951, though on January 15 of each of the intervening years 100 or more of them matured. In each of these bonds appeared the following statement:

"This bond is issued . . . pursuant to and in strict compliance with the Constitution of the State of Arizona, and the statutes thereof, including among others, Chapter II of Title LII of the Revised Statutes of Arizona, 1913, Civil Code, and Chapter 31 of the Session Laws of Arizona, Regular Session 1917; and Acts amendatory thereof and supplementary thereto. . . . "

On July 7, 1941, the board of supervisors of plaintiff county passed a resolution officially demanding that the state loan commission refund the bonds of these two issues then remaining unpaid for the reason that they could be refunded at a substantially lower rate of interest than the county was then paying and on November 7, 1941, the loan commission declined to comply with this demand, whereupon the plaintiff filed in this court an original petition against the loan commission requiring it to take the action requested.

Title LII of the Revised Statutes of 1913, referred to in the foregoing excerpt from the bond, is entitled "State, County, and Municipal Indebtedness," and is composed of two chapters, the first being denominated "Funding and Refunding" and containing paragraphs 5251 to 5265, and the second being headed "County and Municipal Indebtedness" and containing paragraphs 5266 to 5285. Both chapters were in full force and effect when the bonds involved here were issued. The provisions setting up the manner in which bonds should be refunded are found in chapter I and include the bonds issued by counties, school districts and municipalities as well as those issued by the state. Chapter II deals with the original issuance of county, school district and municipal bonds and makes no reference to refunding them.

There is nothing in the bonds themselves, however, making them payable earlier than the date of payment specified in each bond, but the plaintiff contends that

they were redeemable and, therefore, refundable by the loan commission prior to the date of payment under either of two different provisions of Title LII, *supra,* both of which were in full force and effect when they were issued, namely: first, paragraph 5252, which makes them payable (upon the official demand of the board of supervisors) when state bonds can be issued at a lower rate of interest and to the benefit of the state, and second, 5253, which provides that bonds issued by the loan commission are callable after 15 years. Both of these provisions, plaintiff contends, are made applicable to the bonds in question by paragraph 5260, Revised Statutes of 1913, the pertinent portion of which reads as follows:

" . . . The boards of supervisors of the counties, the municipal and school authorities, are hereby authorized and directed to report to the loan commissioners of the state their bonded and outstanding indebtedness, and said loan commissioners may, on written demand, require an official report from the board of supervisors of counties, the municipal or school authorities, of their bonded and outstanding indebtedness, and said loan commissioners shall provide for the redeeming or refunding of the county, municipal and school district indebtedness, upon the official demand of said authorities, in the same manner as other state indebtedness, and they shall issue bonds for any indebtedness now allowed, or that may be hereafter allowed by law, to said county, municipality, or school district upon official demand by said authorities. The county, municipality, or school district shall pay into the state treasury, in addition to all other taxes authorized by law, such amounts as may be directed by the state board of equalization, or on their failure by the state auditor, to be levied for the payment of the principal of such bonds issued in redemption, or refunding, or of other bonds issued to such county, municipality, or school district, as herein provided, in the same manner as is herein provided for the payment of the principal and interest of state

indebtedness, and, in addition, the interest paid by the state on such bonds."

We consider the first of these two contentions. Paragraph 5251, Revised Statutes of 1913, which is section 1 of chapter 29, 1st Special Session of the First Legislature, carried into the revision of that year, and is now incorporated in section 10–401, Arizona Code Annotated 1939, provides for the loan commission in this language:

"For the purpose of liquidating and providing for the payment of the outstanding and existing indebtedness of the State of Arizona, or of the Territory of Arizona, assumed by the State of Arizona, and such future indebtedness as may be or is now authorized by law, the governor of the said state, together with the state auditor and state treasurer, and their successors in office shall constitute a board of commissioners, to be styled the Loan Commissioners of the State of Arizona, and shall have and exercise the powers and perform the duties hereinafter provided."

Paragraph 5252, the substance of which is now included also in section 10–401, Arizona Code Annotated 1939, reads as follows:

"It shall be and is hereby declared the duty of the said loan commissioners to provide for the payment of the existing state indebtedness due, and to become due, or that is now, or may hereafter be authorized by law; and for the purpose of paying, redeeming, and refunding all or any part of the principal and interest of the existing and subsisting state legal indebtedness, and also that which may at any time become due, or is now or may be hereafter authorized by law, the said commissioners shall, from time to time, issue negotiable coupon bonds of this state when the same can be issued at a lower rate of interest than previously paid on state indebtedness and to the profit and benefit of the state."

It is not questioned that paragraph 5252, *supra,* made it the duty of the loan commission to issue the

negotiable coupon bonds of the state "for the purpose of paying, redeeming, and refunding all or any part of the principal and interest" of the legal indebtedness of the state existing at the time that section was enacted and also any that might thereafter become due or be authorized by law, when such bonds could be issued at a lower rate of interest than previously paid on state indebtedness and to the profit and benefit of the state. This being true, any bonds of Arizona, issued while this provision was a part of its statutory law, to take care of the indebtedness specified therein, were redeemable and refundable whenever state bonds could be issued at a rate of interest sufficiently lower than that previously paid to render it profitable and beneficial to the state to issue them. This portion of 5252, whether contained in such bonds or not, becomes as much a part of them when issued as it does if incorporated in them and is binding upon the holders thereof as well as the state. *National Bank of Republic v. City of St. Joseph, C. C.*, 31 Fed. 216; *Miners' & Merchants' Bank* v. *Herron*, 46 Ariz. 71, 47 Pac. (2d) 430; *Catholic Order of Foresters* v. *State of North Dakota*, 67 N. D. 228, 271 N. W. 670, 109 A. L. R. 979; *Roberts & Co.* v. *City of Paducah, C. C.*, 95 Fed. 62; *Board of Commissioners of Harmon County* v. *R. J. Edwards*, 140 Okl. 247, 282 Pac. 1090. It may be that construed in this light, this provision prevents the state from disposing of its bonds as advantageously as it might if they were optional or callable a certain number of years after issuance, for instance, 10 or 15 (*State* v. *Kansas City*, 110 Kan. 603, 204 Pac. 690), yet such is unquestionably the effect of this provision of the statute and it measures the right of every person who sells or purchases state bonds in the matter of their redemption.

The position of the plaintiff is that while chapter I of Title LII deals with "Funding and Refund-

ing'' *state* indebtedness, the legislature, by incorporating therein that portion of paragraph 5260 quoted above, has placed county indebtedness upon the same basis as that of the state and definitely made it the duty of the loan commission to refund county indebtedness the same as it has state indebtedness when an official demand to do so is made upon it by the board of supervisors and the bonds of the state can be issued at a lower rate of interest than the county had theretofore been paying. This, it is claimed, is the meaning of the language in 5260, *supra,* reading: ''and said loan commissioners shall provide for the redeeming or refunding of the county, municipal and school district indebtedness, upon the official demand of said authorities, in the same manner as other state indebtedness, and they shall issue bonds for any indebtedness now allowed, or that may be hereafter allowed by law, to said county, municipality, or school district upon official demand by said authorities.'' This provision, it will be observed, places on the loan commission not merely the general duty of providing for the ''redeeming or refunding of the county . . . indebtedness'' upon the official demand of the board of supervisors of the county, but points out specifically that it shall do this, by issuing ''bonds for any indebtedness now allowed, or that may be hereafter allowed by law, to said county . . . upon official demand by said authorities,'' that is, the board of supervisors in case of a county. And while the official demand of the board is a necessary prerequisite to the loan commission's authority to act, the fact that on the board's demand it must provide for redeeming and refunding county indebtedness ''in the same manner as other state indebtedness,'' carries the idea that the state's negotiable coupon bonds shall be issued to refund a county indebtedness the same as they are issued to refund a state indebtedness, that is, when

they can be issued at a lower rate of interest than the county was theretofore paying and to the profit and benefit of the county. Under this provision there is no difference in the matter of refunding between the indebtedness of the state and the indebtedness of the county which includes "any indebtedness now allowed, or that may be hereafter allowed by law," that is, any that has been fixed or established, and not merely that which has matured, or become redeemable at the option of the board of supervisors upon the expiration of a specified number of years. Clearly the purpose of paragraph 5260, *supra,* was to make it the duty of the loan commission to refund a county's indebtedness, whether evidenced by bonds, or otherwise, when officially requested by the board of supervisors to do so and the bonds of the state can be sold at a rate of interest sufficiently lower than that the county was theretofore paying to render it profitable and beneficial to the county to issue them.

In one of the briefs filed by *amici curiae* mention is made of the profit to the county and loss to the holders of the bonds that will result if it is held that the bonds are refundable upon the demand of the board of supervisors when said bonds can be issued at a lower rate of interest and to the profit of the county. The question of profit and loss does not enter into the matter. It is purely one of contract. In considering this question the court, in the case of *Catholic Order of Foresters* v. *State of North Dakota, supra* [67 N. D. 228, 271 N. W. 673, 109 A. L. R. 979], used the following language which is undoubtedly a correct statement of the law:

" . . . It follows that the question here is purely and simply one of contract. Whether profit shall be made or loss shall be suffered by either the maker or the holders of these bonds is wholly immaterial. The rights and obligations of the parties are defined by

the contract in the bond, including, of course, the statute pursuant to which the bond was issued. . . . ''

The other provision of the Revised Statutes of 1913 which plaintiff contends makes the bonds redeemable and refundable by the Commission prior to the date of maturity is paragraph 5253, which is carried into the 1939 Arizona Code Annotated, as section 10–402, and reads as follows:

''Said bonds shall be issued as nearly as practicable in denominations of one thousand dollars, but bonds of a lower denomination, of not less than one hundred dollars may be issued when necessary. Said bonds shall bear interest at a rate to be fixed by said loan commissioners but in no case to exceed five per centum per annum, which interest shall be paid in gold coin or its equivalent in lawful money of the United States, on the 15th day of January and July in each year, at the office of the state treasurer or some bank or trust company in the City of New York at the option of the purchaser of said bonds, the place of payment being mentioned in said bonds. The principal of said bonds shall be made payable in lawful money of the United States within twenty-five years after date of their issue. The state reserves the right to redeem at par any of said bonds in their numerical order at any time after fifteen years after the date thereof. They shall bear the date of their issue; state when, where, and to whom payable; rate of interest, and when and where such interest is payable; shall be signed by said loan commissioners; shall have the seal of the state affixed thereto; shall be countersigned by the state treasurer and bear his official seal, and shall be registered by the state auditor in a book to be kept by him for that purpose, which record shall show amount sold for, or if exchanged, for what exchanged; and the faith and credit of the state is hereby pledged for the payment of said bonds and the interest accruing thereon as herein provided.''

The first two words of this section ''Said bonds'' disclose that the bonds referred to therein are those issued by the loan commission to refund state

indebtedness in compliance with paragraph 5252, and, hence, have no reference whatever to bonds issued by other authorities. This being true, it is clear that the 15 year provision is not a part of the bonds the plaintiff seeks to have refunded. However, when bonds are issued by the loan commission to refund either state indebtedness or that of a county, municipality or school district, this provision becomes a part of them, whether incorporated in them or not, and renders them redeemable at the expiration of that period of time.

Whether, however, bonds that must run 15 years before any of them may be redeemed may be sold at a rate sufficiently lower than the 5½ and 6 per cent. now paid, to render it profitable and beneficial to the county to refund them, is a matter resting with the board of supervisors of plaintiff county and by the passage and service upon the loan commission of its official demand that ''public necessity requires that said bonds be refunded and at a substantially lower rate of interest now available,'' it has determined that they can be refunded at such a rate. Evidently the board has satisfied itself that the unpaid $2,100,000 of the first issue, which bears 5½ per cent. interest and will be fully paid in 7 years, or in 1949, and the unpaid $2,800,000 of the second issue, which bears 6 per cent. and will be fully discharged in 9 years, or in 1951, can be refunded at a rate of interest so much lower than that now paid that it will be for the county's best interests to pay no portion of the $4,900,000 remaining unpaid until 15 years from the issuance of the refunding bonds has expired.

The loan commission contends further that if it is required to refund bonds in the sum of $4,900,-000, the state will increase its indebtedness beyond $350,000, the limit prescribed by the state Constitution. Section 5, article 9. The following statement,

which is the last sentence of paragraph 5260, *supra,* and was the law when the bonds in question were issued and under which they must be refunded, if at all, discloses that this contention is wholly without merit:

" . . . The county, municipality, or school district shall pay into the state treasury, in addition to all other taxes authorized by law, such amounts as may be directed by the state board of equalization, or on their failure by the state auditor, to be levied for the payment of the principal of such bonds issued in redemption, or refunding, or of other bonds issued to such county, municipality, or school district, as herein provided, in the same manner as is herein provided for the payment of the principal and interest of state indebtedness, and, in addition, the interest paid by the state on such bonds."

It will be observed that the state does not pledge its full faith and credit to the payment of the refunding bonds issued by the loan commission at the request of the board of supervisors, but that the only obligations it is required to undertake regarding them are to see that taxes for the payment of them, principal and interest, are levied and collected by the county and paid to the holders thereof by the state treasurer. In this situation, the state becomes in effect merely the agent of the bondholders to see that these acts are accomplished.

As we see it, the duty of the loan commission to refund the bonds in question arose when the board of supervisors made an official demand upon it to do so and the bonds of the state could be sold at a rate of interest sufficiently lower than that the county was then paying to make it profitable and beneficial to the county to refund them.

The alternative writ heretofore issued is made peremptory.

LOCKWOOD, C. J., and ROSS, J., concur.