[Civil No. 4606.   Filed April 12, 1943.]

[136 Pac. (2d) 270.]

MARICOPA COUNTY, a Body Politic and Corporate, Plaintiff, v. SIDNEY P. OSBORN, Governor of the State of Arizona; ANA FROHMILLER, State Auditor of the State of Arizona; and J. D. BRUSH, State Treasurer of the State of Arizona, Constituting THE LOAN COMMISSIONERS OF THE STATE OF ARIZONA, Defendants.

Mr. Harold R. Scoville, County Attorney and Mr. Leslie C. Hardy, Special Counsel, for Plaintiff.

Mr. Joe Conway, Attorney General and Mr. Earl Anderson, Special Assistant Attorney General, for Defendants.

McALISTER, C. J.—This is a proceeding in *mandamus,* brought by the board of supervisors of Maricopa County, Arizona, to compel the governor, the state auditor and the state treasurer, as the loan commissioners of Arizona, to execute and deliver $4,100,000 refunding bonds of the State of Arizona for the purpose of redeeming a like amount of outstanding Maricopa County highway bonds, bearing interest at the rate of 5½% and 6%.

In *Maricopa County* v. *Osborn, et al.,* 59 Ariz. 244, 125 Pac. (2d) 703, 705, this court determined that these outstanding highway bonds were subject to redemption at any time prior to their fixed maturity dates, notwithstanding the fact none of these bonds had matured .or contained any provision on their face making them redeemable at the option of the county prior to their maturity dates. After it was so held, the loan commission-

ers advertised for bids for $4,100,000 of the State of Arizona refunding bonds to be issued for the purpose of redeeming these outstanding highway bonds of Maricopa County, and one bid was received. A syndicate of investment bankers offered to take the bonds at par and accrued interest and a premium of $800, the bonds to bear an interest rate of $2\frac{3}{4}\%$. The loan commissioners, upon recommendation of the board of supervisors of Maricopa County, on February 10, 1943, awarded the bonds to this bidder. It will be observed that the difference in interest on the refunding bonds, $2\frac{3}{4}\%$ per annum, as compared to interest accruing on the outstanding highway bonds, $5\frac{1}{2}\%$ and $6\%$, will be a saving to Maricopa County and its taxpayers of approximately $3\%$ per annum on the $4,100,000 principal amount of the bonds, or a saving of $124,750 in interest the first year of the refunding bonds.

After awarding the bonds to the successful bidder the loan commissioners, acting on the advice of the attorney general of the state, refused to execute and deliver the $2\frac{3}{4}\%$ refunding bonds for several reasons. The questions before this court in this action, raised by such refusal, involve several propositions of law and these will be treated in the order we think best.

The first proposition advanced is that none of the highway bonds are subject to redemption at the option of Maricopa County, or upon call of the loan commissioners, prior to their fixed maturity date, and if the State of Arizona refunding bonds were issued at this time, long prior to the fixed maturity dates of the county highway bonds, the taxpayers of Maricopa County would be compelled to pay interest both on the county highway bonds and also on the refunding bonds. If we cannot stop interest from running on the outstanding county bonds, no benefit or profit will result to the county from the issuance of the state refunding bonds. This question is answered by the opinion in the

case of *Maricopa County* v. *Osborn, supra,* wherein we said:

"This being true, any bonds of Arizona, issued while this provision was a part of its statutory law, to take care of the indebtedness specified therein, were redeemable and refundable whenever state bonds could be issued at a rate of interest sufficiently lower than that previously paid to render it profitable and beneficial to the state to issue them. This portion of 5252, whether contained in such bonds or not, becomes as much a part of them when issued as it does if incorporated in them and is binding upon the holders thereof as well as the state. *National Bank of Republic* v. *City of St. Joseph,* C. C., 31 Fed. 216; *Miners' & Merchants' Bank* v. *Herron,* 46 Ariz. 71, 47 Pac. (2d) 430; *Catholic Order of Foresters* v. *State of North Dakota,* 67 N. D. 228, 271 N. W. 670, 109 A. L. R. 979; *Roberts & Co.* v. *City of Paducah,* C. C., 95 Fed. 62; *Board of Commissioners of Harmon County* v. *R. J. Edwards,* 140 Okl. 247, 282 Pac. 1090."

■ Again, it is suggested that there is no legal procedure by which the call for redemption may be made under existing law, for individual notice to each and every bond holder would be required and this cannot be given as it is impossible to ascertain the names of the owners of negotiable bonds which are being transferred every day in the open market. Hence, any publication notice of redemption would be an idle act and interest would continue to run on the outstanding bonds and the county would be required to pay the same. In view of the statute we see no difficulty of this nature, for the publication notice of redemption will stop the interest, even though they cannot be personally notified. Section 10–406, Arizona Code 1939, which is the same as paragraph 5258 of the 1913 Civil Code, provides:

"*Applying proceeds to redemption of indebtedness.*—The money received by the treasurer shall be applied by him to the redemption of the indebtedness

for the redemption of which the bonds were issued, and the treasurer shall give notice, as for the payment and redemption of state warrants, of his readiness to redeem such indebtedness, and thereafter interest on all such indebtedness due and outstanding shall cease. Before such indebtedness be paid, the state auditor shall indorse on each certificate the amount due thereon, and write across the face of each the date of its surrender and the name of the person surrendering, and shall keep proper record thereof.''

The Arizona law since 1887, has prescribed the manner of giving notice for the paying and redemption of territorial warrants. Paragraph 2987, Revised Statutes of 1887, which was carried into the statutes of 1901, as Paragraph 158, reads as follows:

''Whenever the treasurer has on hand funds beyond the amount to pay interest on the bonds, and to meet outstanding warrants, he shall proceed to redeem the bonds of the territory in the order of their presentation to him. If none are presented, he shall advertise, in some paper published at the capital, at least two consecutive times, announcing his readiness to redeem bonds to the extent of the funds on hand, and shall allow at least thirty days for their presentation. When the territorial treasurer has on hand five hundred dollars he shall advertise in the same manner as provided for in this section, that he will redeem warrants to that amount, and upon such publication interest on such warrants shall cease, but the money for the redemption of the same shall be retained for that purpose six months.''

This provision for the publication of notice of the redemption of warrants was in existence simultaneously with the existence of the Funding Act, U. S. Revised Statutes, paragraph 2046 (see Revised Statutes of Arizona, 1901, page 106), which provided also that upon receipt of the purchase price of the bonds issued by the loan commissioners, the treasurer should give notice of his readiness to redeem the indebtedness as

provided by law, as in the case of the payment and redemption of territorial warrants. So, when the special session of the first legislature of the State of Arizona readopted and continued in force the powers, functions and duties of the loan commissioners as chapter 29, it effectively continued in force for all purposes insofar as the rights, powers and functions of the loan commissioners are concerned, the provision of paragraph 158 of the Revised Statutes of Arizona 1901, fixing the time and method of publication of notice for the redemption of outstanding bonds to be paid from proceeds of the sale of refunding bonds issued by the loan commissioners.

■■ It will be noticed that in section six of the resolution of the loan commissioners, adopted February 10, 1943, awarding the 2¾% State of Arizona refunding bonds, they provided that notice of redemption of the outstanding bonds of Maricopa County should be given by publication of such notice in at least two consecutive issues of a newspaper published in the state capital. The Weekly Gazette was selected. The fact that paragraph 158 was subsequently repealed is not material because the rule is that when a statute is incorporated by reference the repeal of the statute does not in any wise destroy the effectiveness of its incorporation in the statute which is continued in force. Hence, it is wholly immaterial whether paragraph 158 of the Revised Statutes of 1901, was continued in force as a separate statute by the Revised Statutes of 1913, or not. It was continued in effect insofar as the manner of giving notice of redemption was concerned by paragraph 5258 of the Revised Statutes of 1913. In 59 Corpus Juris 937 and 938, section 548, the general rule is thus stated:

"A statute which refers to and adopts the provisions of a prior statute is not repealed or affected by the subsequent repeal of the prior statute. In such case, the in-

corporated provisions, considered as a part of the second statute, continue in force and are unaffected by the repeal.''

See also 25 R. C. L. 907, sections 160 and 161; *Kendall* v. *United States,* 12 Pet. 524, 9 L. Ed. 1181.

The loan commissioners provided, in addition to the notice required to comply with the statutory provisions relative to state warrants, that publication of such notice should be had once a week for one month in three newspapers published in the State of Arizona, no two of which are published in the same county, thereby also complying with the provisions of paragraph 5260, Revised Statutes of 1913, and section 10–408, Arizona Code 1939, which prescribed the notice to be given upon the redemption of refunding bonds themselves, namely, notice in the same manner as bids for the sale of bonds are required to be advertised under section 10–404, Arizona Code 1939. The loan commissioners provided also for additional notice by publication in ''The Bond Buyer,'' a publication in the City and State of New York, and also in the ''Wall Street Journal, Pacific Coast Edition,'' a newspaper published in the City and County of San Francisco, California. A copy of the notice of redemption was further required to be mailed to every bank or paying agent at which interest on the bonds of Maricopa County for redemption was made payable. *City of Spartanburg* v. *Leonard,* 180 S. C. 491, 186 S. E. 395.

■■ It is suggested further that the proposed refunding bonds are serial bonds which mature $300,000 each year, 1944 to 1956, and $200,000 in 1957, and that these maturities are in direct violation of the statute which requires that the refunding bonds mature in 25 years, optional after 15 years. Hence, none of these bonds can legally be paid prior to 15 years, the minimum period the bonds must run before any of them can be redeemed. Paragraph 5253, Revised Statutes of

1913, in referring to the bonds issued by the loan commissioners, provides ''The principal of said bonds shall be made payable in lawful money of the United States within twenty-five years after date of their issue.'' This means that the bonds may be made redeemable any time within 25 years, for instance, five or ten years, or any number of years less than 25. In 44 C. J. 1222–23, section 4199, the rule is stated as follows:

'' . . . A constitutional or statutory provision that an issue of municipal bonds or debentures shall not extend beyond a certain number of years from the date of issuance, or from the date of the taking effect of the by-laws providing for their issuance, is a limitation upon the power to issue the bonds or debentures, and bonds or debentures having a longer time to run than that prescribed are void. On the other hand, bonds running for a shorter period than the maximum prescribed by constitution or statute may be lawfully issued; . . . ''

The provision ''The state reserves the right to redeem at par any of said bonds in their numerical order at any time after fifteen years after the date thereof'' means merely that if the bonds should be made callable or redeemable 25 years after date of issue, or any number of years less than 25, but more than 15 years, the state reserves the right to redeem any time after 15 years. If the bonds mature any time before 15 years, there is nothing upon which the optional clause may operate.

Again, it is suggested by the loan commissioners that no authority exists for the levy or collection of sufficient taxes to pay the principal of the bonds as they become due. It would require a full period of 25 years before such taxes could be levied each year sufficient to retire these bonds and the State of Arizona would be in default throughout this period due to the statutory limitation upon the amount of the taxes which could legally be levied and collected for the payment of the bonds, and the credit of the state irreparably injured.

The statute does not limit the annual tax levy required to service the bonds, but on the contrary requires that taxes be levied sufficient to pay in full the principal and interest on the State of Arizona refunding bonds as the same become due and payable. The last sentence of paragraph 5260, Revised Statutes of 1913, the one immediately following that part of the section making it the duty of the loan commission to provide for the refunding of the county indebtedness upon the official demand of the board of supervisors of the county, specifically says:

"The county, municipality, or school district shall pay into the state treasury, in addition to all other taxes authorized by law, such amounts as may be directed by the state board of equalization, or on their failure by the state auditor, to be levied for the payment of the principal of such bonds issued in redemption, or refunding, or of other bonds issued to such county, municipality, or school district, as herein provided, in the same manner as is herein provided for the payment of the principal and interest of state indebtedness, and, in addition, the interest paid by the state on such bonds."

It will be noted that this provision makes it the duty of the county to pay into the state treasury, in addition to all other taxes authorized by law, such amounts as may be directed by the state board of equalization, or upon its failure by the state auditor, to be levied for the payment of the principal of such bonds issued in redemption or refunding, and in addition the interest paid by the state on such bonds. There is no limit in the amount to be raised in any one year, but the board of equalization, or upon its failure to act, the auditor, shall direct the amount to be levied to cover the payments.

The new refunding bonds, the loan commissioners contend, issued with fixed maturity dates, will be subject to refunding the day after their issuance by

the loan commissioners, and a fraud in effect worked upon the holders of the refunding bonds who are entitled to rely on the fixed maturity date set forth in the bonds themselves. The bonds would be subject to redemption only upon the dates fixed in the bonds themselves or, in case they run longer than 15 years, the state reserves the right to redeem at the end of that time. In the case of *Maricopa County* v. *Osborn, supra,* we said:

"The first two words of this section 'Said bonds' disclose that the bonds referred to therein are those issued by the loan commission to refund state indebtedness in compliance with paragraph 5252, and, hence, have no reference whatever to bonds issued by other authorities. This being true, it is clear that the 15 year provision is not a part of the bonds the plaintiff seeks to have refunded. However, when bonds are issued by the loan commission to refund either state indebtedness or that of a county, municipality or school district, this provision becomes a part of them, whether incorporated in them or not, and renders them redeemable at the expiration of that period of time."

The statute requires that the coupons be signed by the treasurer and the loan commissioners specifically ordered that "The interest coupons attached to said bonds shall bear the facsimile signature of the State Treasurer of the State of Arizona which he shall by the signing of said bonds adopt as and for his own signature." They now say that such a signature is not sufficient, but that he must sign personally. In 58 C. J. 729, par. 17, is found the following statement of the facsimile or autographed signature of a person as being in law his signature:

"*E. Mode of Affixing.* The signature·may be written by hand, or printed, or stamped, or typewritten, or engraved, or photographed, or cut from one instrument and attached to another. A signature lithographed on an instrument by a party is sufficient for the purpose

of signing it, and it has been held that it is immaterial with what kind of an instrument a signature is made.''

See also *Smith* v. *Greenville County,* 188 S. C. 349, 199 S. E. 416; *Hewel* v. *Hogin,* 3 Cal. App. 248, 84 Pac. 1002; *Town of Lexington* v. *Union Nat. Bank,* 75 Miss. 1, 22 So. 291; *Toon* v. *Wapinitia Irr. Co.,* 117 Or. 374, 243 Pac. 554; *Lamaster* v. *Wilkerson,* 143 Ky. 226, 136 S. W. 217; *Hill* v. *United States,* 7 Cir., 288 Fed. 192. From these authorities it is plain that the facsimile signature of the state treasurer, Mr. Brush, is sufficient.

We are of the opinion the refunding bonds of the State of Arizona should be issued, hence the alternative writ heretofore ordered is made peremptory.

ROSS and STANFORD, JJ., concur.