In the Matter of SAVE–ON–CARPETS OF ARIZONA, INC., an Arizona Corporation, Debtor.

Robert L. JARRATT, as Trustee of the Estate of Save-On-Carpets of Arizona, Inc., Trustee-Appellee,

v.

TREND MILLS, a Division of Champion International, Creditor-Appellant.

No. 75–3810.

United States Court of Appeals, Ninth Circuit.

Nov. 23, 1976.

William F. Bennett (argued), of Duecy, Moore, Petsch, Robinson & Bennett, Scottsdale, Ariz., for creditor-appellant.

Thomas W. Murphy (argued), Phoenix, Ariz., for appellees.

Before BROWNING and KILKENNY, Circuit Judges, and VAN PELT, District Judge.*

KILKENNY, Circuit Judge:

On this appeal, we are asked to determine whether Trend Mills [appellant] has a valid security interest in various assets of the debtor. Both the bankruptcy court and the district court found that, under the Uniform Commercial Code [UCC] as adopted by the state of Arizona,[1] it did not. We reverse.

FACTS

On March 6, 1974, the debtor was adjudicated a bankrupt. In 1975, the bankruptcy

---

* The Honorable Robert Van Pelt, Senior United States District Judge for the District of Nebraska, sitting by designation.

1. A.R.S. § 44–2201 et seq.

court held hearings to ascertain the nature and amount of the appellant's interest in the debtor's assets. It rejected the appellant's contention that it had a valid security interest in any of the property under Article 9 of the UCC.[2]

The interest of the appellant is evidenced by a financing statement which was duly filed with the Arizona Security of State. In the space provided on the statement [3] for the signature of the secured party, there was a typed name but no *handwritten* name.

The bankruptcy court found that the appellant had only an unsecured claim because of its failure to comply with A.R.S. § 44–3141 providing:

"A. *A financing statement is sufficient if it is signed by the debtor and the secured party,* designates by typing or printing the names and mailing addresses of both the debtor and the secured party and contains a statement indicating the types, or describing the items, of collateral . . ." [Emphasis Added.]

This conclusion rests at least in part upon the finding by the bankruptcy court that:

". . . the security agreement asserted by Trend Mills in support of its secured claim was acknowledged not to be signed by the secured creditor Trend Mills . . ."

The district court accepted this finding as not clearly erroneous.

### ISSUE

The sole issue before us is whether the district court erred in holding that the financing statement was not "signed" as required by the Arizona statute.

### ANALYSIS

■ At the outset, we find ourselves required to set aside the finding of the bankruptcy court—accepted by the district

court—that appellant acknowledged that it had not signed the financing statement. Our examination of the record requires a contrary finding. The appellant made no such acknowledgement. For that matter, its position has always been to the contrary.[4] Accordingly, this finding by the bankruptcy court and the district court is clearly erroneous. F.R.Civ.P. 52(a). Beyond that, the appellant's brief in the bankruptcy court makes perfectly clear its contention that the typewritten name was a "signature" within the meaning of the statute.

The Arizona Code [A.R.S. § 44–2208(39)] defines "signed" as:

". . . includ[ing] any symbol executed or adopted by a party with present intention to authenticate a writing."

The appellant's intent to authenticate the financing statement is objectively manifested by the direction that its corporate name and its credit manager's name be typed in the appropriate spaces, and by the submission of the financing statement to the Arizona Secretary of State for filing. Any other interpretation would be contrary to commercial experience and our knowledge of business practices. As stated in the draftsmen's comment to this section:

". . . No catalog of possible authentications can be complete and the court must use common sense and commercial experience in passing upon these matters."

That the Arizona Supreme Court if passing on the subject would arrive at the same conclusion is clearly indicated by *Maricopa County v. Osborn,* 60 Ariz. 290, 136 P.2d 270 (1943), and other authorities such as *Benedict v. Lebowitz,* 346 F.2d 120 (CA2 1965), and *In Re Sport Shack,* 383 F.Supp. 37 (N.D.Cal.1974).

■ We hold that the Arizona statute, properly construed, permits a person or cor-

**2.** A.R.S. § 44–3101 *et seq.*

**3.** Form UCC–1.

**4.** "It's our position that there, in fact, is a signature, a typewritten signature on the fi-

nancing statement." Bkcy.Tr. p. 6. An additional reference by the appellant's attorney to the "typewritten signature" may be found at Bkcy.Tr. p. 8.

poration to *sign* a financing statement by a typewritten signature.

Our decision is buttressed by A.R.S. § 44–2202; it provides that the Code shall be liberally construed and applied so as to promote its underlying purposes and policies, to-wit:

"1. To simplify, clarify and modernize the law governing commercial transactions.

2. To permit the continued expansion of commercial practices through custom, usage and agreement of the parties.

3. To make uniform the law among the various jurisdictions."

When the intent to create a security interest is as apparent as it is here, we would do injustice to these policies if we declined to give effect to the manner in which this financing statement was signed. In addition, the financing statement as filed by the appellant could in no way have misled potential creditors of the debtor or in any other way have detracted from the principles and policies of the Code.

We reverse and remand to the district court for entry of a judgment consistent herewith.

REVERSED AND REMANDED.